ARMSTRONG and others *against* AYRES.

The statute of 1838, "abolishing imprisonment for debt," &c., providing that the person arrested may require the officer to take him before a justice, &c., relates only to actions *founded on contract.*

The statute of 1842, on the same subject, prohibiting all arrests and imprisonments upon process, mesne or final, founded on contract merely, is inconsistent with the act of 1838, and repeals it.

By the statute of 1842, the legislature, considering imprisonment for debt as too harsh a remedy, abolished it, in the introductory clause, leaving the other causes of action enumerated in the proviso, to be enforced as before.

Where the plaintiff brought an action on the case, alleging, in one count, that the defendant, being indebted to the plaintiff in a certain sum, for which he had given his promissory notes, fraudulently conveyed away and concealed his property, and kept it out of the reach of legal process; and in another count, that the defendant had, by false and fraudulent representations, obtained goods from the plaintiff on credit, giving notes therefor which he had never paid, and was unable to pay; it was held, that this was a strongly marked action *in tort*, within the proviso of the statute; and that the defendant might be lawfully arrested and held to bail, in such action.

A party arrested in an action founded on contract merely, may be relieved, *on motion.*

THIS was an action founded on the statute of 1842, entitled, "An Act to abolish imprisonment for debt."

The declaration contained two counts. In the first, it was alleged, that on the 21st of *February,* 1846, the defendant was justly indebted to the plaintiff, in the sum of 776 dollars, 25 cents, by two promissory notes, one for 398 dollars, 12 cents, the other for the sum of 398 dollars, 13 cents, which notes have never been paid ; that the defendant, intending to defraud the plaintiffs, and to prevent them from ever recovering said debt, by legal process or otherwise, fraudulently and corruptly transferred to *Frederick Ayres,* the father of the defendant, and caused to be placed out of the reach of legal process, all his, the defendant's goods, effects and estate, *viz.,* a large quantity of leather, &c., of much greater value than the amount of the debt so due to the plaintiffs ; and with the like fraudulent and corrupt intent, to avoid the payment of said debt, the defendant hath hitherto continued, and still doth continue, to withhold and keep from the reach of legal process, his said leather, &c. ; and that the defendant, although of sufficient ability to pay said debt, hath hitherto wholly neglected and refused, and still doth neglect and refuse to pay the same, or any part thereof, though thereunto often requested and demanded ; and doth also refuse to discover any property or effects, out of which said debt can be recovered.

In the second count, it was alleged, that on the 24th of *May,* 1845, the defendant, contriving and intending to defraud the plaintiffs, and to procure of them a large quantity, *viz.,* 1200 dollars worth of hides, leather and other articles, by fraud and covin, falsely and fraudulently represented to the plaintiffs, that he was a man of property and abundant means, and had a large real estate, and was not indebted, but was free from debt and unembarrassed, whereas he was, in fact, then in embarrassed circumstances, and largely indebted and insolvent ; which false and fraudulent representations were 'made, with intent thereby to procure from the plaintiffs, said leather, hides and other articles, and with intent to defraud the plaintiffs thereof, by obtaining a credit therefor, from the plaintiffs ; that the plaintiffs, relying upon said representations, and induced thereby, on said 24th of *May,* 1845, sold to the defendant, on credit, a large quantity,

*viz.,* 1000 dollars worth of hides, leather and other articles, and received therefor, from the defendant, certain notes, [describing the notes specified in the first count ;] that the defendant, soon afterwards, became, and now is, openly and confessedly bankrupt, and entirely destitute of property, and avowedly unable to pay said notes; and the same are wholly due and unpaid.

The suit was commenced, by process of attachment, which was served, on the 22d of *April*, 1846, by attaching the body of the defendant, reading the writ in his hearing, and taking bail for his appearance at court. The writ was made returnable, and returned, to the term of the superior court, held on the 1st *Tuesday* of *October*, 1846 ; when the parties appeared; and thence, by legal continuances, the cause came to the term of the court, in *October*, 1847, at which term the parties again appeared; and the defendant and *Chauncey Ayres*, his bail, filed their motion, praying, for the reasons therein stated, to be discharged and exonerated from said bail-bond, and that the defendant be admitted to plead to the plaintiffs' declaration, without giving special bail.

The motion set forth the following facts : That the defendant had been, for many years next preceding his arrest, and at that time was, an inhabitant of and resident in this state; that the pretended cause of action, alleged in the plaintiffs' declaration, did not accrue against the defendant, on or before the 4th of *July*, 1837, or the 1st of *July*, 1838; that neither the plaintiffs, nor any one of them, nor any agent of theirs, ever made affidavit, before the authority who issued the writ, that they, or either of them, or such agent, verily believed, that the defendant "had assigned, removed, or disposed of, or concealed, or was about to dispose of, any of his property, with intent to defraud his creditors, or was about to remove from this state; that after said arrest, and while the defendant was in custody of the officer, the defendant, being desirous and intending to avail himself of the provisions of the statute law of this state, enacted in the year 1838, entitled " An Act to abolish imprisonment for debt, and to repeal an act therein mentioned," by applying to some justice of the peace, for the purpose of having administered to him, by such justice, the oath by said statute provided, did require the officer who had made the arrest,

forthwith to take him before a justice of the peace, who might by law judge between the parties, for the purpose of having administered to him, by such justice, according to the provisions of said statute, the oath therein provided ; that such officer, well knowing the premises, wrongfully and illegally refused to do so, and declared to the defendant, that he would take him to gaol, upon said process, unless the defendant would give bail in said action ; that the defendant, to avoid being thus taken and committed to gaol, by virtue of said process, and to procure his liberation from said arrest, and being, by reason of the wrongful and illegal refusal and conduct of said officer, unable to go, or be taken, before a justice of the peace, for the purpose aforesaid, was compelled to procure and give, and being so compelled, did procure and give, to said officer, bail, by procuring said *Chauncey Ayres,* his brother, as his surety, to execute, jointly with him, said bail-bond.

To this motion the plaintiffs replied, that the same, and the matters therein contained, were untrue, and if true, were insufficient.

The court found the facts stated in the motion to be true ; and reserved the question as to what relief, if any, should be granted, for the advice of this court.

*Hawley,* in support of the motion, contended, 1. That this case was within the statute of 1838 ; which gave the person arrested, in any case involving the facts here set forth, a right to be taken immediately before a justice, &c. That law embraced all cases " founded *on contract,*" though accompanied by the *aggravation* of secreting property, fraud, &c. Here, *the contract* is declared on ; it is indispensable to the action ; and there can be no recovery, without proof of it. The rules both of pleading and of evidence applicable to actions on contract merely, would all be applicable here. *Walcott* v. *Canfield,* 3 *Conn. R.* 194. *Powell* v. *Layton,* 2 *New Rep.* (or 5 *Bos. & Pul.*) 365. *Max* v. *Roberts, Id.* 454. *Weall* v. *King,* 12 *East,* 452.

2. That the object of the statute of 1842 was to *relieve ;* and it ought not to be so construed as to impose a more severe burthen than before. We are here, in the first place, to regard the *old law*—which exposed to imprisonment in

all cases ; the *mischief*—its too great severity ; and the *remedy*—the exemption from arrest in all but some specified cases.    The law of 1842, including the proviso, extends only to cases founded on contract *merely*—*i. e.* on contract, unaccompanied with any such matter of aggravation—of course, leaving cases accompanied with such aggravation, under the old law.    Secondly, the whole foundation of the claim on the other side, is the *proviso.*    Now, the office of a proviso is merely to *save* or *except* from the operation of the enacting clause—not to enact any thing new, and especially, not to add to the severity of the old law, from which it is the sole object of the enacting clause to relieve.

3. That this was a proper mode of obtaining the relief sought.

*Butler,* contra, contended, 1.  That no question being made as to the regularity of the arrest, and the action being *ex delicto,* the defendant had no right to take the oath before a justice.    In the first place, the action was one *ex delicto, in form.*    The remedy authorized by the statute of 1842, is, " an action on the case at common law for fraud ;" and such, in form certainly, is the action brought.    Secondly, it is so, *in substance,* also.    The *gist* of the action is *fraud ;* and the contract is stated as *incidental.    Maine* v. *Bailey,* 15 *Conn. R.* 298.

2.  That by the law, as it stood prior to 1842, the defendant could not take the oath before a justice, unless arrested on an action "founded on contract."    *Stat.* 319. (ed. 1838.) The statute of 1842, did not extend the right to actions sounding in tort.

3.  That if the defendant had a right to take the oath before a justice, it does not follow that the bond is *void.*    Here, was no duress of imprisonment, the defendant being lawfully arrested.    1 *Sw. Dig.* 311.

4.  That the motion was novel, and not the proper mode of obtaining the relief sought.

CHURCH, Ch. J.    If the views of the defendant, of the nature of this action and the true character of this declaration, are correct ; and if, as he claims, the proceedings under it, should have been regulated by the statute of 1838, " Abol-

ishing imprisonment for debt," then the officer serving this process, had no right to exact this bail bond: it would be void, and the motion here filed, by himself and his bail, should prevail, and the defendant be permitted to plead to the action, without special bail.   If the defendant is entitled to any relief under the law, we discover no objection to the summary relief sought by the motion.   But we think, the bond valid, and that the officer was justified in requiring it.

*Fairfield,* June, 1849.

Armstrong *v.* Ayres.

The statute of 1838, which, the defendant supposes, should have governed the conduct of the officer arresting him, relates only to actions founded on contract.   If this be such an action, the body of the defendant should not have been arrested at all ; for the statute of 1842, abolishing imprisonment for debt, prohibits all arrests and imprisonments upon process, mesne or final, founded on contract merely.   The act of 1838 is inconsistent with this, and is repealed by it. There could, therefore, have been no proceedings under that act, which allowed arrests of the body in actions on contract, in a modified form of procedure.

We are aware, that the claim of the defendant is, that this is not an action founded on contract merely, nor an action for tort ; but an action combining fraud and contract ; and therefore, is not reached, by the statute of 1842.   The gist of all actions, we suppose, to be either *ex contractu* or *ex delicto* :—*i. e.*, they sound either in tort, or contract ; and this statute did not intend to abolish the distinction.

The plaintiffs, in instituting and prosecuting this action, supposed themselves to be acting entirely under the law of 1842.   They supposed, they were suing in an action for a fraud, under that law ; and it becomes important, therefore, that its provisions be examined.

That some of the enactments of that statute, are obscure, and will probably give rise to dispute hereafter, we believe ; yet so far as the present question is concerned, we think the intention of the legislature is most obvious, as we learn it from the language of the law and its general purpose.

Inability to pay debts, was no longer to be treated as deserving imprisonment ; and this remedy for the collection of debts, was considered as too harsh ; and the legislature, in very positive language, abolished it, by the introductory clause of the statute.   But all other causes of action enume-

rated under the proviso, were left to be enforced as before. And remedies by action on the case for fraud, were provided, even beyond former limits, so that all tort-feasors and fraudulent debtors should be discouraged and checked, by danger of imprisonment.

The present cause of action falls clearly within those enumerated under the proviso, to be enforced by imprisonment, if necessary. It is an action *on the case,* for fraudulently assigning, conveying and concealing a debtor's property away from his creditors, and away from legal process,—a remedy not before existing, but expressly given by this statute. *Smith* v. *Blake,* 1 *Day,* 258. It is an action for fraudulently and collusively obtaining a credit and contracting a debt. It is a strongly marked action *in tort.*

It can make no difference in the construction or effect of this statute, that the several causes of action, except that in its introductory enactment, which are particularly enumerated, are included, under what the legislature was made to call, a *proviso.* Notwithstanding this form, this part of the law was chiefly intended as an enacting one; although, in some respects, it performs the office of a proviso, by way of exception or modification of the enacting clause standing before it; as in the cases of promises to marry, actions against a public officer, or a person acting in a fiduciary capacity, &c., the remedies for which are, or may be, in form, *ex contractu.*

It is claimed, by the defendant, that this action, although in form, *ex delicto,* is essentially an action founded on contract; that its object is, to recover the debt described in the declaration, and that the rule of damages must be the amount of that debt; and therefore, his body was not subject to arrest, even under the statute of 1842. We do not decide, that the rule of damages must be the amount of the plaintiffs' debt, or that it can be recovered in this form of action. But if it were so, this would not prove, that the action is founded upon contract merely, or even essentially. But fraud is here an essential ingredient in the action itself; it is not merely attached collaterally to the character or conduct of the defendant; it constitutes the gist of the action, and without proof of it, there can be no recovery, however well the debt may be established. Under the common law forms

*Fairfield,*
June, 1849.

Armstrong
*v.*
Ayres.

of pleading, *not guilty* would have been the only proper general issue to this declaration. *Westcott* v. *Carder*, 2 *Day*, 418. *Bulkley* v. *Storer, Id.* 531. The action in this form, is brought, by virtue of the new power and remedy, given by the statute in question, and is one of the specified causes of action, in which the power of imprisonment has not been taken away. No count in this declaration could be joined with a count upon the notes; it would be a palpable misjoinder of counts. If the action had been brought upon the notes, as upon promises, in the usual form ; and the pleader had introduced all these charges of fraud, they would have been only matters of *surplusage*, so far as the right of recovery is involved, and need not have been proved. The gist of the action would have still been founded upon contract merely, and no imprisonment could have followed.

Our views of this statute are confirmed, by a recurrence to the late revision of the laws. In that revision, this statute of 1842 has been dissected, and so as to leave no doubt of the opinion of the revisers, and of the legislature, regarding its proper construction, in the particulars we have referred to. So much of it as exempts the body from imprisonment, is contained under the title "Civil Actions," *sec.* 194., *page,* 104 : and so much as subjects to imprisonment, is found under the same title, *sec.* 283. *page* 130., under the head of " Trespass on the case," and embraces the personal action. We are all very clear, that, as this is an action for a tort, the defendant and his bail can take nothing by this motion.

In the argument, questions were suggested, which it was supposed might have some bearing upon our present decision, and to which we have not adverted, in this opinion ; such as what must be the rule of damages in cases of this character, if they are to be treated as actions in tort; and what may be the effect of a recovery here, upon a future action brought upon the notes ; or how a recovery here will bear upon an action brought by some other creditor, for the same fraud here complained of?

We advise that the motion filed in this case, should be denied, by the superior court.

In this opinion the other Judges concurred.

Motion to be denied.