October 1, 1859.

## SUPREME COURT—OCTOBER TERM, 1859.

### JOHN TILLMAN *vs.* THOMAS SPENCER.

In levying upon a ship or any other chattel owned in common, the officer may levy upon the whole, but he can sell only the individual share of the judgment debtor.

A plaintiff in execution does not *ipso facto* become a co-trespasser with the Marshal or Sheriff, if the latter attaches and sells the property of a third party; but by giving bonds of indemnity to the Marshal and directing him to sell the entire chattel, including the property of said party, and by receiving only a portion of the gross undivided fund, renders himself a co-trespasser.

Held also, that such plaintiff received a proportionate amount of the undivided share of such third party, who has a right to follow and reclaim it in the hands of such plaintiff.

Where property is tortiously taken, a party may waive the tort, affirm the sale and sue simply for the proceeds, alleging that they came to the defendant's hands.

And in such action founded upon the tortious conversion of the property, not necessary to show privity between the plaintiff and defendant, as in cases purely *ex contractu.*

A motion to set aside the verdict rendered in favor of a plaintiff and enter a nonsuit, is a motion addressed to the sound discretion of the Court, as controlled by legal principles.

Motion to set aside the verdict, and enter judgment of non-suit against the plaintiff.

Decision of the Court :

John Tillman v. Thomas Spencer.

This is an action of assumpsit, for money had and received to the plaintiff's use, brought to recover one-eighth share of the proceeds of the American whaleship "Nile," sold at auction by the Marshal in the month of February, 1854, upon an execution issued in the suit of Thomas Spencer vs. William Bailey and George S. Gilbert. At the trial, the plaintiff proved that, at the time the ship "Nile" was attached and sold by the Marshal, to satisfy the defendant's judgment against Bailey and Gilbert, he (the plaintiff) was the owner of one-eighth part of said ship. It appeared also that when the Marshal attached · the ship, which he did by direction of the defendant, he received from him a bond of indemnity, executed by Spencer as principal, and Harris T. Fitch as surety, which was subsequently changed, before the selling of the ship, which was done by the direction of the defendant or of Harris T. Fitch, with the defendant's knowledge and assent, for a bond executed by Fitch as principal and Spencer as surety, the latter having verbally assigned to the former his claim against Bailey and Gilbert. But the suit was prosecuted to judgment in the name of Spencer, in whose name also execution was issued, and to whose attorney the amount of the judgment, with interest, was paid by the Marshal, out of the proceeds of the ship, outfits and appurtenances. The whole amount received by the Marshal from the sale of the ship and appurtenances was $13,036 40, out of which he paid to Spencer's attorney the sum of $6,640 74. He paid also nearly $2,000 for seamen's wages and other claims against the ship at the United States Consulate, together with the expenses and commissions incident to the levy and sale ; and the balance, $3,000 27, he paid into Court as ordered. This amount was afterwards reduced to $2,770 59, by the payment of two claims against the ship for supplies furnished her at sea.

The jury, under instructions from the Court, returned a verdict in favor of the plaintiff for $1,392 56, being one-eighth part of the sum paid to Spencer on his execution, with interest thereon ; and the defendant now moves to set aside the verdict, and enter judgment of nonsuit against the plaintiff on certain exceptions noted at the trial. The exceptions are as follows :

1. That there was no evidence that the defendant had re-

ceived any part of the proceeds of the ship "Nile," but, on the contrary, there was evidence that the money paid by the Marshal to Mr. Bates was paid to him as the attorney of another than the defendant, and did not go to the defendant's benefit in any way.

2. That the Court erred in directing the jury that the defendant was responsible for the conduct of the Marshal in taking and selling plaintiff's interest in the ship "Nile," as the testimony distinctly proved that the Marshal acted under the instructions of Harris T. Fitch in selling that property.

3. That the Court erred in not charging the jury, upon request, that the Marshal was not the agent of the libellant in the suit in admiralty of Spencer *vs.* Bailey and Gilbert, but an executive officer of the Court; and if he tortiously sold the property of the plaintiff, he alone is responsible.

4. That the Court erred in charging the jury that it was not necessary for the plaintiff to prove that the defendant received the money as trustee, or with the knowledge of the plaintiff's rights in the property out of which the money was made, or in other words, that there must be privity between the plaintiff and defendant to make the defendant responsible for money had and received.

5. That the Court erred in not charging the jury, upon request, that if they found Tillman was the owner of one-eighth of the ship "Nile," the other seven-eighths being, by his own showing, the property of Bailey and Gilbert, was properly sold to pay Spencer's judgment; and that if Spencer has not received more than seven-eighths of the proceeds of the sale, he has not received for the use of the plaintiff the other one-eighth.

The first point, it seems to us, is clearly unsound, the evidence being that the amount of Spencer's judgment was paid over to his attorney, Mr. Bates, who gave his written receipt for the money, as such attorney, and passed the money into the hands of Spencer's book-keeper. The payment by the Marshal to the plaintiff's attorney was payment to the plaintiff himself; and the private, verbal assignment of his claim to Harris T. Fitch, or any extraneous disposition which he may have made of the money, cannot be allowed to prejudice the rights of Tillman.

In regard to the second and third points, we would remark that a plaintiff in execution does not, *ipso facto*, become a co-trespasser with the Marshal, or Sheriff if the latter attaches and sells the property of a third party; but the plaintiff may, by his acts and conduct, become, in contemplation of law, a partici-pator in the trespass of the officer, and so make himself liable as a co-trespasser. At the trial, some of us entertained consid-erable doubt as to whether or not Spencer had made himself a co-trespasser with the Marshal in the sale of Tillman's share of the ship " Nile." But we have now no doubt whatever upon that point. The evidence in the case shows Spencer's partici-pation in the acts of the Marshal to have been such as clearly makes him a co-trespasser with the latter, within the ruling in numerous adjudged cases. The trespass of the Marshal did not result from his taking possession of the whole ship, in levying under the execution, but from his selling the share of "Till-man" along with the interest of Bailey and Gilbert, the judg-ment debtors. In levying upon a ship, or any other chattel, owned in common, the officer may levy upon the whole, but he can sell only the individual share of the judgment debtor. (Brown *vs.* Hedges, 1 Salkeld, 392; Melville *vs.* Brown, 15 Mass. Rep., 82; Beaumont *vs.* Crane, 14 Mass. Rep., 400; Lothrop *vs.* Arnold, 25 Maine Rep., 136.) By selling the share of Tillman, the Marshal became a trespasser, *ab initio.* (Melville *vs.* Brown, 15 Mass. Rep., 81; Walker *vs.* Fitts, 24 Pick. Rep., 194.) And Spencer, by giving bonds of indemnity to the Marshal, and di-recting him, or suffering others to direct him, on an execution issued at his (Spencer's) suit, to sell the whole ship; and by re-ceiving a part of the proceeds at the hands of the Marshal, through his attorney, Mr. Bates, made himself a co-trespasser with the Marshal, as to Tillman's share of the property.

With respect to the fourth point, it is well settled in the courts of England and the United States, that, in general, a party whose goods have been taken from him or detained un-lawfully, whereby he has a right to an action of trespass or trover, may, if the wrongdoer sell the goods and receive the money, waive the tort, affirm the sale, and have an action for money had and received, to recover the proceeds. In such ac-tion, founded upon the tortious conversion of property, it is not

necessary for the plaintiff to show privity between himself and the defendant, as in cases purely *ex contractu.* If the money of the plaintiff has come to the hands of the defendant wrongfully, under such circumstances that in equity and good conscience he ought not to retain it, the law, upon principles of natural justice, raises an implied obligation upon his part to refund it. (Lamine *vs.* Dorrell, 2 Lord Raymond's Rep., 1216; Moses *vs.* Macfarlan, 2 Burrow's, 1008; Taylor *vs.* Plumer, 3 Maule & Selwyn, 562; Neat *vs.* Harding and Bowns, 4 English Law and Equity Rep., 494; Beardslee *vs.* Horton, 3 Michigan Rep., 564; Gilman *vs.* Wilbur, 12 Pick. Rep., 124; Jones *vs.* Howe, 5 Pick. Rep., 290.)

We come now to the fifth point made by defendant's counsel, and which involves the main question in the case, viz: Did the present defendant, after the sale, receive the proceeds of the *plaintiff's share* of the property, or any part thereof? The question here is not as to whether the defendant, co-operating with the Marshal, tortiously took possession of, and sold, the plaintiff's share of the property, for the plaintiff now waives the tort, affirms the sale and sues simply for the proceeds, alleging that those proceeds came to the defendant's hands. Neither the Marshal nor the present defendant is responsible, in *this form of action*, merely because he was a party to the trespass, but can only be held so on the ground of having actually received the proceeds of Tillman's property, or some part thereof. So that this equitable form of action is more favorable for the defendant than would be an action of trespass or trover, supposing either of those could be maintained against him.

It is clear that Tillman's share came to the hands of the Marshal, because he received the *whole* proceeds arising from the sale of the ship and her appurtenances; but it is argued on the part of the defendant, that as he received from the Marshal only a part of the proceeds, not amounting to seven-eighths, he did not receive the one-eighth belonging to Tillman, or any portion thereof, and that his share still remained in the hands of the Marshal, and was paid into Court. , •

The facts of this case are such as probably arise but very seldom, and we regret that we have not been able to find a reported case precisely parallel, for the circumstances of this case

are such as to afford fair ground for the ingenious argument of the defendant's counsel. If the plaintiff had owned the whole of the ship "Nile," his right to recover from the defendant the part of the proceeds that came to his hands would be plain. Or if the defendant had received *all* the proceeds of the ship and appurtenances, the plaintiff's right to recover his share from the defendant would be clear.

It is true, as contended by the learned counsel for the defendant, that he had a right to demand from the Marshal a sufficient sum out of the moneys levied under execution to satisfy his judgment against Bailey and Gilbert. But that does not affect the question now to be decided, because the defendant would have had that right as against the Marshal, even if Tillman had claimed to be the owner of the whole property. If Tillman had received, either in person or through his agent, one-eighth of the proceeds of the property, from the hands of the Marshal, before the payment of Spencer's judgment, then clearly it could not be said that the latter had received any part of Tillman's money. Or if Tillman had assented to the payment of Spencer's judgment out of the gross fund, relying for his share upon the balance paid into Court, the like result would follow. But Tillman never assented to such payment, nor to any division or application whatever, by the Marshal, of the proceeds of the property sold; and after mature reflection, we are all of the opinion that the defendant, by receiving a part of the gross undivided fund, must, according to law and sound reason, be held to have received a proportionate amount of the undivided share which belonged to the plaintiff, who has a right to follow and reclaim it in the defendant's hands. The verdict rendered in favor of the plaintiff is not for one-eighth of the whole proceeds, as claimed by him, but only for one-eighth of the sum which actually came to the defendant's hands, together with interest, and that we think is just and legal.

As the motion to set aside the verdict and enter a non-suit is a motion addressed to the sound discretion of the Court, as controlled by legal principles, we think the last argument urged by the plaintiff's counsel, if the grounds which we have already given for refusing the motion were not of themselves sufficiently decisive, would be deserving of great consideration; for so far

as we are able to see at present, we cannot discover that any benefit would result to the defendant by setting aside the verdict, even were it clear to us that plaintiff had mistaken his form of action. We think no injustice is done to the defendant by permitting the verdict to stand, as obtained in this action for money had and received.

The motion is refused.

Let judgment be entered in favor of the plaintiff, as of the last day of term.

Messrs. Montgomery and Harris for plaintiff.

Mr. Bates for defendant.