## GOO YEE *v.* HARRY ROSENBERG.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED MARCH 17, 1913.                DECIDED APRIL 11, 1913.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

CONTRACTS—*effect of illegality—parties in pari delicto.*

Contracts founded upon an illegal consideration or which contemplate the performance of that which is either *malum in se* or prohibited by some positive statute are void and one who has paid money in pursuance of such a contract will, after the contract has been performed and when the parties are in *pari delicto* ordinarily be denied the aid of the courts in recovering the money so paid.

ID.—*parties not in pari delicto.*

Though both parties to the transaction are *particeps criminis* still if they are not in *pari delicto* the one less guilty will ordinarily not be denied the assistance of the courts.

ID.—*malum prohibitum—where penalty on one party only.*

Where the law has prohibited the act of one only of the parties to a transaction, the one whose act is not prohibited is, when the offense is merely *malum prohibitum,* not in *pari delicto.*

ID.—*unlawful intention on one side only, together with fraudulent representations.*

One who, desiring to act lawfully, is induced to purchase contraband opium by the fraudulent representation of the seller, believed and relied upon, that the opium was lawfully imported prior to the enactment of the federal act of February 9, 1909, is not in *pari delicto* with the seller and will not be denied relief by the courts.

ASSUMPSIT—*money had and received—money obtained by fraud.*

An action for money had and received will lie to recover money obtained by the defendant from the plaintiff by deceit. The law implies a promise by the defendant to repay it to the plaintiff.

ID.—*defense that money was paid to another.*

One who has induced another to purchase opium by the fraudulent representation that the opium was lawfully imported and is a lawful subject of commerce and has by means of the representations obtained money from the purchaser, cannot set up in defense to a suit for the money so obtained by fraud that he acted as agent for the United States and has paid over the money to his principal.

## OPINION OF THE COURT BY PERRY, J.

### (Robertson, C.J., Dissenting.)

This is an action of assumpsit for money had and received, the amount claimed being $114. The jury rendered a verdict for the plaintiff. The defendant's exceptions now relied upon are to the denial of a motion for a directed verdict made at the close of plaintiff's opening statement and again at the close of plaintiff's evidence, to certain instructions given to the jury, to the verdict as contrary to the law and the evidence and to the overruling of a motion for a new trial.

Evidence was adduced tending to show the following facts: that plaintiff was engaged in the business of buying and peddling merchandise and was in the habit of buying some, at least,

of his goods from defendant; that in 1909 and 1910 in conse-
quence of a prescription by a Chinese doctor plaintiff used
opium for an ailment from which he was suffering; that in
1909 defendant, upon learning from plaintiff the fact of his ill-
ness and of the prescription, told plaintiff that he (defendant)
had opium for sale (this is denied by defendant); that in 1910
plaintiff applied to defendant for opium and that defendant,
after consulting his own attorney, informed the United States
district attorney of the application, was requested by the latter
to make a sale of opium to plaintiff and was furnished by the
district attorney, for the purposes of the sale, with three tins of
contraband opium which had been confiscated by the United
States; that the defendant sold and delivered the opium to plain-
tiff for the sum of $114 and that plaintiff paid that sum to
defendant; that to none of the three tins of opium were affixed
stamps as required by the customs regulations relative to foreign
importations but that upon each of the three tins were written
the initials, "E. R. S.," of the collector of customs for the port
of Honolulu; that plaintiff stated to defendant, before mak-
ing the purchase, that he wanted stamped opium and that when,
in the course of the negotiations resulting in the sale and pur-
chase, defendant exhibited the three tins to plaintiff, the latter
objected that the tins were unstamped and defendant, referring
to the initials, replied that there was "some writing on it, mark
on it that is better than the opium with stamp on it; it is marked
from the custom house" (the making of these representations
is denied by defendant); that under the direction of the district
attorney officers followed the plaintiff from the place where the
transaction occurred and shortly thereafter seized the opium
and arrested the defendant on a charge of purchasing and re-
ceiving contraband opium; that plaintiff was subsequently tried
before a jury and acquitted; that the purpose of the district
attorney in furnishing the opium and in requesting defendant
to make a sale to plaintiff was "to secure evidence in a general

way relative to the importation and handling of opium and, in the particular case, what connection this defendant" (the present plaintiff) "might have with it;" that the $114 was subsequently paid by the defendant to the district attorney and that the money has not been repaid or the opium returned to the plaintiff.

An Act of Congress approved February 9, 1909 (35 Stat. at Large, p. 614), prohibits the importation of opium in any form save for medicinal purposes only and under regulations which the secretary of the treasury is authorized to prescribe, and renders unlawful the receipt, concealment, purchase and sale of opium imported contrary to law. Under sections 1399 and 1400, R. L., the sale of opium, "except upon the written prescription of a duly licensed physician signed by him" is forbidden and made criminal. It is not contended that the transaction in question was within either of the exceptions named in these statutes.

The presiding judge instructed the jury that "the dealing in unstamped opium in the Territory is prohibited by the general statutes of the United States" and that if this plaintiff "purchased from the defendant opium prohibited by the statutes of the United States, knowing such to be the case, any sum which he may have paid for such opium, actually received by the defendant, could not be recovered back by the plaintiff in an action of this kind"; that "the sale of opium in any form, stamped or unstamped, is also prohibited by the statutes of the Territory, excepting by a person duly licensed for such purpose"; and also that "if you find that this plaintiff paid his money to the defendant knowingly, openly and in violation of the statute of the Territory, then a recovery could not be had by the plaintiff against the defendant, but if you find as the law says that those parties were not *in pari delicto,* in other words, equally responsible for this transaction, and that the plaintiff was induced, either by deceit, undue influence or by fraud, to enter into this

transaction, then in my opinion the amount paid for the opium or other substance could be recovered by the plaintiff as against the defendant in an action of this kind."

The general principles suggested by a consideration of this case are well known, but the applicability of those principles presents questions not free from difficulty. It has been long settled, for example, that contracts founded upon an illegal consideration, or which contemplate the performance of that which is either *malum in se,* or prohibited by some positive statute, are void and that one who has paid money in pursuance of such a contract will, after the contract has been executed, and when both parties are in *pari delicto,* or equally guilty, be denied the aid of the courts in recovering the money so paid. *Spring Co.* v. *Knowlton,* 103 U. S. 49; *Tracy* v. *Talmage,* 14 N. Y. 162; 2 Parsons on Contracts 746. It is as well settled, however, that though both parties to the transaction are *participes criminis,* still if they are not in *pari delicto,* the one less guilty will not be denied the ordinary assistance of the courts. *White* v. *Franklin Bank,* 22 Pick. 181; *Lowell* v. *Boston and Lowell R. R.,* 23 Pick. 24; 1 Story, Eq. Jur., §300; Bishop on Contracts, §629. And where the law has prohibited the act of one only of the parties to a transaction and has thus "marked the criminal," the legislation being with full knowledge that the other party is indispensable to the transaction, the one whose act is not prohibited is, when the offense is merely *malum prohibitum,* not equally guilty, even though his part was necessarily an incitement to the performance of the prohibited act. *Tracy* v. *Talmage,* supra; *Thomas* v. *Richmond,* 12 Wall. 349; *White* v. *Franklin Bank,* supra; *Duval* v. *Wellman,* 124 N. Y. 156; *Manchester R. R.* v. *Concord R. R.,* 9 L. R. A. (N. H.) 689; *Williams* v. *Hedley,* 8 East 378. It has likewise been held that "even where the contracting parties are in *pari delicto,* the courts may interfere from motives of public policy. Whenever public policy is considered as advanced by allowing either party to sue

for relief against the transaction, then relief is given to him."
*Hobbs* v. *Boatright,* 5 L. R. A., N. S., 906 (Mo. 1906) ; 2 Pom.
Eq. Jur., §941.

Viewing the case at bar with reference to the territorial
statute alone, which renders unlawful the sale, but not the pur-
chase or the possession, of opium, whether it was imported law-
fully or unlawfully, it is clear that the plaintiff was not in
*pari delicto* with the defendant and should not be denied an in-
vestigation by the courts into the merits of his claim.    On the
other hand, the federal statute of February, 1909, attached
criminal penalties to the purchasing and receiving as well as to
the selling of opium and if there were no more to the case the
conclusion would be required, *in limine,* that the plaintiff was
a *particeps criminis* and in *pari delicto* in a violation of a posi-
tive statute and could not be heard in a judicial tribunal.    But
the federal statute in question does not relate to opium lawfully
imported prior to its enactment.    It is at this point that the
contention on behalf of plaintiff becomes material, that the de-
fendant inveigled him into making the purchase by the false
representation that the three tins of opium offered for sale had
been lawfully imported and that the customs collector's initials
written on each of the tins showed this as clearly as would have
been indicated by government stamps.    Passing for the mo-
ment the question whether the misrepresentation was one of
fact or one of law and, if of law only, whether plaintiff was con-
clusively chargeable with a knowledge of the law, plaintiff is
not, for the purposes of this civil action, to be regarded as
having been equally guilty if in truth by reason of false repre-
sentations by defendant, believed and relied upon by the plain-
tiff, the latter was induced to make the purchase in good faith,
in the belief that that particular opium had been lawfully im-
ported and that he could lawfully buy it.    "Where a man is de-
frauded, as often happens, by the misrepresentations of some-
one who assumes knowledge, and where, under the circum-

stances, he is actually deceived, and not consciously wrong, the fact that the transaction is against public policy in law will not necessarily compel the victim to submit to the fraud of the actual villain. The only rigid rule forbidding relief is where the parties are in equal guilt. While the law does not draw fine distinctions in ascertaining equality of wrong, it recognizes the fact that one party to such an arrangement is not necessarily an equal party in guilt, or consciously guilty at all, and will not deny relief to an injured party against the one who is really the deceiver, and who commits fraud by means of his persuasive or other influence." *Hess* v. *Culver*, 6 L. R. A. 500. See also *Knight* v. *Linzey*, 8 L. R. A. 476. It would be abhorrent to one's sense of justice to close the door of the courts to one who consciously committed no offense and who was induced to join in the transaction and part with his money by the fraudulent representations (of the nature mentioned) of the defendant who asks that the plaintiff be not heard.

It is urged, however, that plaintiff was chargeable with knowledge of the law and that no misrepresentation concerning the law can now be of avail to him. Let it be assumed that the misrepresentation was purely on a matter of law. The maxim is certainly familiar that *ignorantia legis neminem excusat*; and yet one court (*Haven* v. *Foster*, 9 Pick. 111, 129) has said that "whether money paid through ignorance of the law can be recovered back, is a question much vexed and involved in no inconsiderable perplexity" and another (*Swedesboro Association* v. *Gans*, 65 N. J. Eq. 132, 133) that "this maxim is subject to so many exceptions that it is quite as often inapplicable as applicable to supposed mistakes of law." See also *Freichnecht* v. *Meyer*, 39 N. J. Eq. 551, 558. The following observations on the subject are eminently just and sound: "That a party may not urge his ignorance of the law as an excuse or palliation of a crime, or even as a fault, we may admit; that he may not, by reason of such ignorance, or mistake,

obtain any right or advantage over another, we may admit; but we do not admit, that such other may obtain or secure an unjust advantage over him, by reason of his ignorance or mistake, even of the law. We agree that men should not complain of the consequence of their deliberate and voluntary acts; but we do not agree, that acts performed under the influence of essential and controlling mistakes, are voluntary, within the meaning of the maxim referred to. And we say, that neither maxims of law, nor fictions of law, should be so applied as to work manifest injustice." *Northrop* v. *Graves,* 19 Conn. 547, 559, 560. Kerr (Fraud & Mistake, pp. 398, 400), referring to the jurisdiction in equity and to mistakes of law, says: "If it appear that the mistake was induced or encouraged by the misrepresentations of the other party to the transaction, or was perceived by him and taken advantage of, the court will be more disposed to grant relief than in cases where it does not appear that he was aware of the mistake;" and "where a contract is executed under a mistake, in point of law, where mistake is produced by the representation of one of the parties, the other may be relieved, as well as if the mistake was as to matter of fact." "If a party, who himself knows the law, should deceive another, by misrepresenting the law to him * * * relief would be granted on the ground of fraud." *Jordan* v. *Stevens,* 51 Me. 78, 81. See also *Brock* v. *Weiss,* 44 N. J. L. 241, 244, and 2 Pom. Eq. Jur., §847. If, therefore, the plaintiff's mistake, if there was one, as to the law was induced by the fraudulent representation of the defendant, the maxim under consideration would not apply to defeat his right to a hearing in court or to a recovery. The ordinary rule is that courts will lend their aid to the determination of controversies arising between individuals. An exception is that such aid will not be granted where the transaction out of which the controversy arose is illegal and both parties are in *pari delicto;* but where the plaintiff's participation in the transaction is induced by the defendant's fraudulent representa-

tion that the article dealt in has been lawfully imported and is a lawful subject of trade, the exception does not apply. Such a plaintiff is in this respect in as favorable a position as any other person innocent of wrong doing.

If the instructions given to the jury were not sufficiently precise or were otherwise objectionable, the error will doubtless be cured at a new trial.

As to the truth or falsity of plaintiff's claims concerning false representations by the defendant, that is a matter wholly within the province of the jury to determine. If there were no false representations by defendant to the effect that the opium had been lawfully imported or if the representations, if made, were not believed or relied upon by the plaintiff, the latter was in view of the federal statute in *pari delicto* with the defendant and the courts will leave the parties where they find them and accordingly render judgment for the defendant.

The point is also made that since the $114 has been paid by defendant to the United States district attorney and by the latter to the treasurer of the United States, plaintiff cannot recover. The sale occurred on November 29, 1910. Plaintiff was on February 9, 1911, tried and acquitted on the criminal charge of purchasing and receiving the opium. After the trial defendant paid the money to the district attorney. Defendant's own evidence, relating to the money, was that during the intervening time he "used—had it in the bank." Without relying, however, upon the testimony last quoted, defendant should not be permitted to defeat a recovery by merely showing that he paid the money to another. Immediately upon obtaining the money by fraud, if he did, the law implied a promise on his part to repay it; and an action of assumpsit, for money had and received, will lie. 27 Cyc. 863; *Humbird* v. *Davis,* 210 Pa. St. 311; *Minor v. Baldridge,* 123 Cal. 187; *Young* v. *Taylor,* 36 Mich. 25. The rule that an action for money had and received will not lie against an agent who has paid the money to his principal before receipt of notice that it is claimed by the

person from whom he received it does not apply. While the defendant had been constituted the agent of the United States for the purpose of detecting an offender, he was acting outside of his employment when (if he was guilty of so doing) he induced the plaintiff to purchase opium by the false representation that it was lawfully imported opium. The relation of principal and agent did not exist for any such purpose. *Bocchino* v. *Cook,* 67 N. J. L. 467; *Bennett* v. *Ives,* 30 Conn. 329; Story, Agency, §320. It cannot be presumed that the United States was a party to such a fraud and upon the evidence there is no room for the inference that the district attorney directly or indirectly authorized, encouraged or countenanced it. The United States, if aware of the fraud, would have repudiated the sale and declined to accept the money as not belonging to it or in any way forfeitable to it by either of the parties. The opium was contraband and of no monetary value and if the sale was procured through this fraud and therefore without participation by the United States defendant was under no obligation to pay the money to the United States and must be regarded as having received it for his own benefit and as having converted it to his own use. *Bocchino* v. *Cook,* supra. The fact that the money was not in defendant's possession at the time of suit or that he himself derived no benefit from it is not of itself conclusive against the maintenance of the action. Even in a case of agency, "if the money is obtained by the agent illegally, by compulsion or extortion, it seems that an action will lie against the agent, though it has been paid over to his principal without notice, unless the payment was made expressly for the use of the principal." *Butler* v. *Livermore,* 52 Barb. 570, 579. See also *Ripley* v. *Gelston,* 9 Johns. 201, 207, 208; *Frye* v. *Lockwood,* 4 Cowen 454, 456, and Mechem on Agency, §564.

The plaintiff did not testify, and there was not sufficient evidence to sustain a finding, that he believed and relied upon the defendant's alleged false representations. For this reason the verdict cannot be upheld and the exceptions must be sustained.

But judgment *non obstante veredicto* should not be directed. There was no motion for such a judgment, merely a motion for a new trial. Without saying that such a motion is indispensable, judgment *non obstante* should not be granted unless it appears that on a new trial the plaintiff will not be able to supply the defects in the evidence and make a showing which would sustain a verdict in his favor. 23 Cyc. 779, 778. Without violating the rule that questions of credibility are for the jury alone, we cannot undertake to say that such a showing cannot be made by plaintiff.

The exceptions are sustained, the verdict set aside and a new trial granted.

*J. Lightfoot* for plaintiff.

*C. C. Bitting* for defendant.

---

### DISSENTING OPINION OF ROBERTSON, C.J.

I think there is nothing to be gained by a re-trial of this case. The essential facts of the case are uncontradicted and either the plaintiff or the defendant should have judgment according to what the law is as applied to those facts. The story is a simple one. The defendant informed the United States district attorney that a Chinaman had expressed a desire to buy some·opium. The district attorney furnished the defendant three tins of contraband opium to sell to the plaintiff in order that he might be caught and arrested upon a charge of violating the federal statute which prohibits (except for medicinal purposes under certain regulations) the importation of and traffic in opium. The plaintiff was proceeding in violation of the statute. The transaction has been referred to as a sale but it is perfectly plain that it was only a trap, and that there was no intention that any right of property in the opium or any beneficial use thereof was to be given to the plaintiff. He was to be immediately arrested and the opium taken from him. The scheme contemplated that money was to be accepted from the

plaintiff but it was arranged that he should get nothing for it. The plan succeeded and the object was accomplished. The plaintiff was defrauded out of $114. If the plaintiff is entitled to maintain this action because of a fraud perpetrated on him by the defendant, irrespective of the defendant's purpose, the judgment should be affirmed at once for the evidence is uncontradicted that the plaintiff was defrauded of his money. Surely, there is no need of another trial to enable the plaintiff, if possible, to aggravate the fraud.

An action in affirmance of an illegal transaction or contract cannot be maintained but one in disaffirmance of it may be. The maxim *In pari delicto* will not be applied so as to prevent a recovery where the plaintiff is shown to have been the victim of the positive fraud or imposition of the defendant and the transaction in which they were engaged was not *malum in se*. In such cases relief is sometimes granted even though the plaintiff shows himself to be substantially in equal fault as to the main transaction. There is abundant authority for the proposition that when one has by fraud induced another to pay him money he may not refuse to return it on the ground that both parties had an illegal end in view in the transaction, and that the plaintiff was *in pari delicto*. The defendant in such a case will not be allowed to profit by his own fraud. *Catts v. Phalen,* 2 How. 376; *National Bank & Loan Co. v. Petrie,* 189 U. S. 423; *In re E. J. Arnold & Co.,* 133 Fed. 789; *Stewart v. Wright,* 147 Fed. 321; *Hinsdill v. White,* 34 Vt. 558. In the case at bar the action is in disaffirmance of the illegal transaction and proceeds upon the theory that the law has raised an implied promise on the part of the defendant to re-pay to the plaintiff the sum paid for the opium. But will the law, under the facts of this case, imply such a promise? I think not. Assuming, without conceding, that the plaintiff has a cause of action against the defendant, and assuming that in certain cases a plaintiff may waive a tort and sue in assumpsit upon one or more of the common counts notwithstanding that our statute

(R. L. Sec. 1712) contemplates that in actions upon unliqui-
dated demands the plaintiff's complaint shall "set forth the cause
and manner in which the injury was done circumstantially with
a view to proof," the question is whether in a case like this the
plaintiff may waive the tort and maintain an action of assump-
sit for money had and received. Here, the defendant did not
convert the plaintiff's money to his own use. He neither sought
nor made any profit or gain out of the transaction. Neither
did the district attorney. The money which came into their
hands as an incident to the scheme to entrap the plaintiff passed
as through a conduit to the United States treasury.

To maintain assumpsit for money had and received it is
necessary to establish that the defendant has received money
belonging to the plaintiff which in equity and good conscience
he should return. It is not sufficient to show that the defend-
ant has by fraud or other wrong caused the plaintiff loss or
damage. "A party may in some cases waive a tort, that is,
he may forbear to sue in tort, and sue in contract, where the
matter out of which his claim arises has in it the elements both
of contract and tort. But it has been well said that 'a right
of action in contract cannot be created by waiving a tort, and
the duty to pay damages for a tort does not imply a promise
to pay them, upon which assumpsit can be maintained. *Cooper
v. Cooper,* 147 Mass. 370, 373.'" *Bigby* v. *United States,* 188
U. S. 400, 409. In order to maintain an action of assumpsit
where damage has been caused by a trespass the implied con-
tract must be predicated on the "duty to disgorge the proceeds
of an unlawful acquisition, and not upon the mere general duty
to compensate for injury done," and "it is essential that there
should be an unjust enrichment of the estate of the tortfeasor."
3 Street, Foundations of Legal Liability, 197, 200. *Tillman* v.
*Spencer,* 2 Haw. 178, 182; *Downs* v. *Finnegan,* 58 Minn. 112.
The rule is a general one and includes cases in which fraud or
other wrong forms the gravamen of the plaintiff's case. "As-
suming a defendant to be a tortfeasor, in order that the doctrine

of waiver of tort may apply, the defendant must have unjustly enriched himself thereby. That the plaintiff has been impoverished by the tort is not sufficient. If the plaintiff's claim, then, is in reality to recover damages for an injury done, his sole remedy is to sue in tort." Keener on Quasi-Contracts, 160. *National Trust Co.* v. *Gleason,* 77 N. Y. 400; *New York Guar. & Ind. Co.* v. *Gleason,* 78 N. Y. 503; *Patterson* v. *Prior,* 18 Ind. 440.

In the case at bar the plaintiff repudiates, as he must, the illegal transaction in which he engaged with the defendant, and seeks reparation for the tort by which he was damaged to the extent of $114. Without saying that the plaintiff has another remedy, it is clear that as the defendant or his principal, the district attorney, made no gain out of the affair, the law has raised no implied promise on the part of the defendant upon which *indebitatus assumpsit* can be predicated.

If the view I take of the case is the correct one the defendant's motion that the jury be instructed to find a verdict for the defendant should have been granted, and the case should now be remanded with instructions to enter judgment for the defendant.