JOSEPH P. FLAHERTY v. FRED SCHETTINO

COURT OF COMMON PLEAS    MIDDLESEX COUNTY    FILE NO. 743

Memorandum filed February 10, 1949.

*Mitchel W. Garber,* of New Haven, for the Plaintiff.

*Israel Poliner,* of Middletown, for the Defendant.

FITZGERALD, J. The writ in this action directed the attachment of the body of the defendant. As appears from the sheriff's return, the defendant's body was attached and then released upon the posting of bail for his appearance in court. Hence the action takes the form of a proceeding based upon a statute hereinafter considered.

The complaint is in two counts. In substance, the first count alleges that defendant conducted a general food market in Middletown and plaintiff a wholesale meat business in New Haven; that plaintiff was induced to sell to defendant meats in the amount of $1277.43 on an open book account and upon defendant's representation that he would pay for the same; that defendant then knew he was insolvent; that defendant made false representations to induce plaintiff to sell the meats to him on credit and for the purpose of defrauding plaintiff; that although checks were issued by plaintiff on March 8 and March 13, 1948, neither was good; and that the only payments made by defendant are cash payments totaling $175, leaving a balance due plaintiff in addition to protest charges on one of the checks. The second count differs from the first only in more detailed allegations respecting the checks issued by defendant, including protesting the first check and notice to plaintiff by collecting bank that defendant's account had been closed, notice of such to defendant, and passage of more than eight days after defendant was apprised of the situation with no further action on his part. For answer defendant filed a general denial.

Under the first count the plaintiff asks for a judgment pursuant to § 5994 of the General Statutes, Rev. 1930 (Rev. 1949, § 8303). Under the second count the plaintiff asks for a judgment under the same statute and a second statute, § 6369 of the General Statutes, Rev. 1930 (Rev. 1949, § 8697). The first stat-

ute is prefaced, "Liability for fraud in contracting debt, concealing property"; and the second, "Fraudulent issue of checks or drafts."

It is to be noted that the second statute invoked is solely referable to a criminal prosecution for the fraudulent issuance of checks or drafts. Whether or not the plaintiff is entitled to a judgment in his favor is to be determined by the application of the first statute. This does not mean that matters relating to the checks are excluded from the court's consideration of the case as a whole, but rather that the invoking of the second statute does not confer upon the plaintiff in this, a civil action, an additional remedy.

The controlling statute therefore is § 5994, Rev. 1930. This statute specifies four situations in any one of which the body of the defendant may be attached and taken on execution. See *Murawski* v. *Hinenberg,* 114 Conn. 53, 55. Here we are concerned only with the first situation, namely fraud in contracting the alleged debt. The statute on this phase reads: "When any person shall be guilty of fraud in contracting a debt . . . any creditor aggrieved thereby may institute an action against him, setting forth his debt and such fraudulent act or acts particularly in the complaint, and have process of attachment and execution against the body of the defendant." In *Allen* v. *Woodruff,* 63 Conn. 369, 373, it is said of this phase of the statute as contained in an earlier revision: "Where a debt is contracted by fraud this statute virtually preserves the old remedy of imprisonment for debt."

The question for determination is whether the evidence adduced at the trial on February 1 is of such character as to warrant a plaintiff's judgment under the statute in question. To recover a judgment in this type of action it is not enough for the plaintiff to prove that the defendant owes him a debt. Fraud "constitutes the gist of the action, and without proof of it, there can be no recovery, however well the debt may be established." *Armstrong* v. *Ayres,* 19 Conn. 540, 546.

The only witness to testify at the trial was the plaintiff. His testimony is subject to brief summary. It appears that on February 17, 1948, a mutual friend of the parties introduced them at plaintiff's place of business in New Haven. Plaintiff's version of the introduction is taken from the transcript: "Gene introduced me to him and told me he had a large market in Middletown, next to the Mohican, and he wanted me to take care of

him on some meat. That was our formal introduction." On that occasion defendant placed an order with plaintiff for meats in the amount of $629.34, of which a part was taken away by him on that day and the remainder delivered by plaintiff a few days later. On February 26, 1948, defendant placed another order with plaintiff over the telephone in the amount of $648.09 and delivery was made. At that time defendant told plaintiff that his check covering the first order was in the mail. Actually that check, bearing the date of March 8, drawn upon a Middletown bank, was not received by plaintiff until March 10, on which day it was deposited in a New Haven bank for collection. A few days later another check of defendant in the amount of the second order was received by plaintiff, followed by a telephone call from defendant in which he asked plaintiff to delay depositing it for a few days. Plaintiff agreed to do so. On March 17 the New Haven bank in which plaintiff had deposited the first check for collection returned it to him, accompanied by a certificate of protest and notice that defendant's account in the Middletown bank upon which it was drawn had been "closed." Thereafter plaintiff made many demands upon defendant to pay the outstanding obligations owing to him. With the exception of three cash payments during late March and early April, 1948, totaling $175, the account has not been satisfied.

In addition to the single excerpt from the plaintiff's testimony already quoted, four other excerpts require express reference. On direct examination: "Q. In the course of subsequent conversations with the defendant did you learn something concerning his credit standing at the time he made the original request of you for credit? A. Yes. He seemed to be pretty hard up against it." By the court: "Q. At the time that he originally made the first purchase did he say anything to you concerning his financial status? A. No, except that he told me he would pay weekly. That is our regular terms in the trade, so I assumed he was perfectly all right." By the court: "Q. Let's put it this way. We are trying to ascertain the truth. What was said by Mr. Schettino to you on the occasion of his visit to your place of business on February 17, if anything, concerning his financial standing? A. Well, I told him I wanted weekly payments on it, and he assured me that I would get it." On resumed cross-examination, immediately following above question and answer: "Q. Now that was the sole and total conversation that you had with Mr. Schettino concerning his financial standing; is that correct? A. Yes, sir."

It has already been noted that the only testimony in the case was that given by the plaintiff, the defendant resting at the close of the plaintiff's case. That a defendant "may legally sit inactive, and expect the proponent to prove his own case" is a general rule which obtains in the trial of cases, "until the burden of preducing evidence has shifted." *Seney* v. *Trowbridge,* 127 Conn. 284, 288, quoting 2 Wigmore, Evidence (3d Ed.) p. 179, § 290 (5).

The narrow question is whether on the plaintiff's testimony it may be said that he has sustained the required burden of proof respecting his allegations of false and fraudulent representations on the part of the defendant regarding his ability to pay for the meats ordered. In this connection there should be considered the aspect whether the plaintiff's testimony was at least sufficient in character and degree to have shifted upon the defendant "the burden of producing evidence" in his own behalf. In *Sallies* v. *Johnson,* 85 Conn. 77, 82, to cite but a single case, a definition of "false" and "fraudulent" representations is given. But the problem posed goes beyond the definition of a specific word or group of words.

The case of *Judd* v. *Weber*, 55 Conn. 267, is perhaps the best illustration of the cases in the Connecticut Reports on the question of the propriety of concluding that goods had been brought on credit obtained by means of fraudulent representations made by the defendant respecting his credit. In that case it appears that the defendant had made to the plaintiff the most extravagant statements regarding his financial standing, all of which were false, thereby inducing the plaintiff to his detriment to give the credit in question. But in the case at bar the situation disclosed is not on par with that in the case cited. With the exception of the issuance of the first check returned by the bank with the notation "Account closed," the situation is not greatly different from that which transpires with some frequency in the business world due to changing financial circumstances of a debtor brought about by fast moving business cycles and events. Even with the presence in the case of the returned check, the court is hesitant to conclude that there is sufficient proof to establish the kind of fraud for which the plaintiff contends.

The conclusions which are reached are these: (1) the defendant is indebted to the plaintiff in the amounts claimed; (2) the plaintiff has not made out a case of fraud to warrant the judgment sought under the statute; and (3) the defendant was not

required to disprove the plaintiff's claim of fraud on the ground that the plaintiff had not made out a prima facie case on that aspect.

Under the rule stated in *Armstrong* v. *Ayres,* 19 Conn. 540, 546, the plaintiff's action fails in its entirety. That rule is now quoted in its full context: "But fraud is here an essential ingredient in the action itself; it is not merely attached collaterally to the character or conduct of the defendant; it constitutes the gist of the action, and without proof of it, there can be no recovery, however well the debt may be established."

Judgment for the defendant on both counts.