RONALD ALAN OBER, Plaintiff-Appellee/Cross-Appellant and WILLIAM S. GARDNER, Plaintiff-Appellee
v.
ERIC AARON LIGHTER; ERIC AARON LIGHTER, as Trustee of Credit Bureau International Trust; ERIC AARON LIGHTER, as Trustee of Integrity Five Trust, Defendant-Appellant/Cross-Appellee, and
MITCH C. WALLIS, as Trustee of Volcano Ventures Trust, Defendant/Cross-claim Defendant, and
JOAN ELIZABETH PRESCOTT, as Trustee of Credit Bureau International Trust; CREDIT BUREAU INTERNATIONAL TRUST, a Hawaii Trust, ROOT OF 25 LTD., a Hawaii corporation, Defendants/Cross-claimants-Appellants/Cross-Appellees.
No. 26964.
Intermediate Court of Appeals of Hawaii.
February 28, 2008.
On the briefs:
Eric Aaron Lighter Pro Se Defendant-Appellant/Cross-Appellee.
Preston A. Gima, for Defendants-Appellants/Cross-Appellees Credit Bureau International Trust, Integrity Five Trust, Joan Elizabeth Prescott, as Trustee of Credit Bureau International Trust, and Square Root of 25 Ltd.
Enver W. Painter, Jr. for Plaintiff-Appellee/Cross-Appellant Ronald Alan Ober.

MEMORANDUM OPINION
RECKTENWALD, C.J., FOLEY and NAKAMURA, JJ.
In this consolidated appeal and cross-appeal, Defendant-Appellant/Cross-Appellee Eric Aaron Lighter (Lighter), Defendants/Cross-Claimants-Appellants/Cross-Appellees Credit Bureau International Trust (CBIT), Integrity Five Trust (IFT), Joan Elizabeth Prescott as trustee of CBIT (Prescott), and Square Root of 25 Ltd. (collectively the CBIT Defendants), and Plaintiff-Appellee/Cross-Appellant Ronald Alan Ober (Ober) appeal from the Amended Final Judgment as to All Claims and All Parties filed October 19, 2004 (Amended Final Judgment) in the Circuit Court of the Third Circuit, Hilo Division (circuit court).[1]
On appeal, CBIT Defendants contend that the circuit court erred by: (1) inappropriately granting Ober an equitable lien on the Old Volcano Highway Property (OVHP), (2) improperly convincing Ober to make a Hawaii Rules of Civil Procedure (HRCP) Rule 15(b) motion and subsequently granting the motion, (3) denying CBIT Defendants' motion to alter or amend the judgment, (4) finding that the CBIT Defendants received unjust enrichment, (5) concluding Ober was entitled to equitable remedies, (6) denying CBIT Defendants' motion for summary judgment and/or judgment on the pleadings filed on July 8, 1999, (7) denying CBIT Defendants' motion for a new trial, (8) awarding Ober costs and attorney's fees, (9) entering findings of fact (FsOF) 7, 8, 11, 12, 18, 34, 37, 41, and 64, (10) entering conclusions of law (Cs OL) 17, 18, and 20, (11) refusing to admit exhibits 707 and 1100, (12) entering judgment against CBIT without any substantial basis therefore, and (13) failing to grant Lighter's motion for award of taxation of costs filed November 12, 2004.[2]
Lighter argues that the circuit court erred by: (1) "not granting Lighter's joinder to the CBIT Motion for Summary Judgment,"[3] (2) "denying in whole or in part Lighter's Motions in Limine" (MsIL), (3) granting Ober's MIL, (4) "denying the admission at trial of certified copies of exhibits, 1003, 1006, 1007, 1009, as well as exhibits 707 and 1100," (5) "not granting the CBIT Defendants's motions for directed verdict regarding all of Ober's claims," (6) soliciting Ober's HRCP Rule 15(b) motion to amend the complaint, (7) granting Ober's HRCP Rule 15(b) motion, (8) entering FsOF 7, 12, 18-21, 23, 28, 30, 32-34, 36, 37, 44, and 52, and several unspecified CsOL, (9) granting Ober's "Motion for an Award of Prejudgment Interest, Taxation of Costs and Award of Attorney's Fees," (10) failing to grant Lighter's "Motion for Award of Taxation of Costs" filed on November 12, 2004, (11) entering a judgment against CBIT Defendants and Lighter, (12) not granting Lighter's motion to alter or amend the judgment, and (13) not granting Lighter's motion for a new trial and/or for remittitur.
On cross-appeal, Ober argues that the circuit court erred in: (1) granting an equitable lien instead of rescinding the contract to convey the OVHP, (2) not finding that Lighter fraudulently induced Ober to convey the OVHP, (3) finding no enforceable agreement between Lighter and Ober for the return of the OVHP to Ober, (4) excluding the testimony of Appraiser Jill Chavez,[4] and (5) concluding an award of punitive damages was not warranted.
After a careful review of the record and briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we conclude that: (1) the circuit court erred in concluding that Ober did not prove that he was fraudulently induced to convey title of the OVHP and assign the lease and an option to purchase the Second Street Property (SSP) to Lighter; therefore, Ober is entitled to rescission of both the contract conveying the OVHP and the assignment of the Lease and Option to Purchase the SSP, (2) there is substantial evidence in the record to support those FsOF which were properly challenged by Lighter and CBIT Defendants, (3) the circuit court was correct in denying CBIT Defendants' motion for judgment as a matter of law and in denying Lighter and CBIT Defendants' motion for a directed verdict, (4) the circuit court did not abuse its discretion in denying CBIT Defendants' and Lighter's motion for a new trial and for remittitur, (5) the circuit court did not abuse its discretion in denying Lighter's motion to alter or amend the judgment, (6) Lighter's point of error regarding the circuit court's partial grant of Ober's MIL and denial of Lighter's MsIL is waived, (7) the issue of the admission of exhibits 1003, 1006, 1007, 1009, 707, and 1100, is deemed waived because Lighter and CBIT Defendants failed to argue this point of error, (8) the circuit court did not improperly solicit a HRCP Rule 15(b) motion from Ober and was correct in granting it, (9) the circuit court did not abuse its discretion in awarding Ober costs and attorney's fees, (10) the circuit court did not abuse its discretion in granting Ober's motion for an award of prejudgment interest, and (11) the circuit court did not abuse its discretion in denying Ober an award of punitive damages. Accordingly, we vacate and remand.

I. BACKGROUND
Based on the trial transcripts and exhibits, as well as the circuit court's FsOF which were either not properly challenged on appeal or which we have found were not clearly erroneous, the relevant background facts are as follows.

A. Ober Purchased the SSP and the OVHP Then Encountered Legal Problems
On June 6, 1989,[5] Ober purchased the SSP located in the Mauna Loa Estates Subdivision, Volcano, Hawai`i. After obtaining all the necessary permits for construction on the SSP, Ober constructed two duplexes. The circuit court found that Ober spent approximately $70,000 for materials in making the improvements and another $10,000 in purchasing furniture and appliances. Ober used the units on the SSP as a vacation rental business, which he called "Volcano Inn."
Thereafter, Ober decided to both expand his business and build his dream house. On July 21, 1995, Ober purchased the OVHP[6] from Robert Garland (Garland). Ober and Garland agreed to a $140,000 purchase price for the OVHP, consisting of a down payment of $15,000 and a $125,000 purchase money mortgage in favor of Garland.
At about the same time Ober purchased the OVHP, he became acquainted with various organizations promoting certain theories concerning the constitutionality of federal income taxes, and independence from governmental regulations. Ober attempted to utilize some of these "freedom technology" theories in connection with the improvements of the OVHP. Ober wrote to the County of Hawaii announcing his independence from its regulation and thereafter began the construction of a five bedroom house on the OVHP.
Meanwhile, Ober created an unincorporated trust called "Volcano Ventures" (VV trust) for which he named Mitch C. Wallis (Wallis), an Arizona attorney, as trustee. Ober testified that Wallis was referred to him by Lamarr Hardy of the Research Foundation, one of the "freedom technology" organizations. On October 3, 1995, Ober conveyed all rights, title, and interest in the OVHP to Wallis as trustee of the VV trust, to be held in trust for Ober. Ober testified that one of the reasons he placed his property in VV trust was so the property would be exempt from government regulations.
Because Ober did not obtain the required building permits prior to commencing construction on the OVHP, the Building Division, Department of Public Works, County of Hawai`i issued a "Stop Work Order" on November 20, 1995. Nevertheless, Ober continued to build in violation of the order. Thereafter, on January 10, 1996 in Civil No. 96-6, Ober was sued by his neighbor, Gilbert Livingston (Livingston), who alleged that the construction of the improvements on the OVHP without building permits was improper and should be enjoined. The circuit court agreed with Livingston and, on April 9, 1996, granted a motion for a preliminary injunction enjoining Ober from further construction on the OVHP until he obtained all the necessary permits. Ober testified that on that same day, while he was at the OVHP, police officers handed him the injunction order and arrested him. Ober was jailed on charges of violating the preliminary injunction and served with a second criminal complaint for building without a permit.

B. Lighter Convinces Ober To Convey the OVHP and Assign the SSP To Him
A few months later, Ober was introduced to Lighter by R.J. Smith, an individual putting on one of the "freedom technology" seminars. Lighter was not licensed to practice law, but agreed to help Ober with his criminal case as well as the Livingston case for a fee of $10,000. Lighter told Ober that he had considerable experience as a litigator and that he had numerous victories representing others who had legal problems similar to Ober's. Lighter also represented to Ober that "although he was not a licensed attorney, he was better and more capable than any of the overpaid real attorneys because he was not subject to the same rules as were licensed attorneys[.]" Ober paid Lighter $2,000 and Ober testified that the remaining $8,000 was to be paid in installments.

1. Conveyance of The OVHP To Lighter
The circuit court found that Lighter represented to Ober that in order for him to represent Ober and the OVHP in the Livingston case, it would be necessary for Ober to convey title to the OVHP to Lighter. Ober testified that to secure his interest in the OVHP, he agreed to the conveyance of the OVHP to Lighter on the condition that Lighter sign a quitclaim deed reconveying the OVHP to him, which Ober intended to hold in the event Lighter did not want to reconvey the property. However, Lighter adamantly refused. According to Ober, Lighter told him the reason for refusing was because "[i]f there's a quitclaim deed then [the conveyance] truly is a fraudulent conveyance." The circuit court found that Lighter then "represented to both Wallis and Ober that he would reconvey the property to Ober when requested to do so by Ober. Believing Lighter's promise to reconvey the property whenever Ober asked him to, Ober testified that he instructed Wallis to deed the OVHP from the VV trust over to Lighter. On November 15, 1996, Wallis signed a warranty deed conveying title of the OVHP to Lighter "in consideration of twenty one [d]ollars ($21.00), ... and other valuable consideration paid by the Transferee." The deed was subsequently recorded on November 20, 1996.
Ober testified that to "make the transaction look like a real deal," Lighter orally agreed to have his father assign two promissory notes to Ober, as an agent for the VV trust, in exchange for the conveyance of the OVHP from the VV trust to Lighter. Concurrent with the recording of the warranty deed, Lighter also recorded a document entitled Assignment of Interest in the Bureau of Conveyances whereby Bruce Lighter (Lighter's father) assigned to Ober, as the authorized agent for the VV trust, two $100,000 promissory notes. The promissory notes were secured by "Air Rights and other Developer's Development Rights in the Hawaiian Colony Hotel Project." However, the circuit court found that "[t]he promissory notes secured by the air and development rights in the Hawaiian Colony Hotel Project assigned to Ober in consideration for the conveyance of the OVHP to Lighter were worthless."[7]
Ultimately, the circuit court found that Lighter and Ober colluded to continue with the construction of improvements to the OVHP, and in furtherance of his collusive effort with Lighter, "Ober caused Mitch Wallis, trustee of his self settled trust, [VV trust], to convey title to the OVHP to Lighter." The circuit court also found that the conveyance of the OVHP to Lighter was not supported by any consideration.

2. Assignment of The Lease and Option To Purchase The SSP To Lighter
In December of 1996, Lighter represented to Ober that even though he obtained a building permit in Lighter's name for the improvements made on the OVHP, Livingston would try to take the SSP from Ober, so it was necessary to get the SSP out of Ober's name to protect it from Livingston. The circuit court found that "Lighter proposed that Ober lease the [SSP] to the Ronald Alan Ober Trust [(RAOT)], a nonexistent trust entity, rather than sell the property because of a due on sales clause contained in the first mortgage on the [SSP]." Lighter then prepared a lease and option to purchase whereby Ober leased the SSP to the RAOT.
Subsequently, in 1997, Lighter told Ober that the lease of the SSP to the RAOT would not protect the property and that would be necessary for Ober to assign the lease and option to purchase to IFT. Ober testified that "Lighter proposed to give the [RAOT] additional `commercial paper' to make the deal look real and represented that they could always `trade back paper' and undo the deal whenever Ober requested." Ober further testified that he "was totally reliant on [Lighter] trading paper back" and Lighter's statement that "[h]e had no interest in my property. No interest in my business and still didn't even wanna come to the Big Island." The circuit court found that "Ober believed Lighter and relied upon his representation that the assignment of the Lease and Option to Purchase would be undone by `trading back paper' whenever Ober requested." Lighter prepared the assignment of lease and option to purchase, an extension of lease and option to purchase, and an agreement which Ober executed on April 10, 1997.
The circuit court also found that "[e]ven though the [SSP] had been leased to the [RAOT] in December of 1996 and the Lease and Option to Purchase had been assigned to [IFT] in April of 1997, Ober continued to make the mortgage payments on the [SSP] and continued to use the property in connection with his vacation rental business under the trade name Volcano Inn."

C. Ober Continued To Make Monthly Mortgage Payments And Expend His Own Money To Complete Construction Of The OVHP
Prior to the conveyance of the OVHP to Lighter, Ober testified that he either individually or through VV trust made the monthly mortgage payments directly to Garland for the months of August 1995 through and including October 1996 in the amount of $1,516,60 a month. After Ober conveyed the OVHP to Lighter, Ober, through VV trust, continued to make monthly payments of $1,516.60 to either Garland, Lighter, or CBIT Defendants for the months of November 1996 through and including November 1997.
In the meantime, Ober testified that he hired Les Brown (Brown), a licensed general contractor, to oversee the construction on the OVHP. Ober testified that he obtained a building permit under Lighter's name as the new owner of the OVHP. After a building permit to build on the OVHP was obtained, Ober said he paid for the plumbing and electrical permits, and helped finish the siding, closed the walls, and "basically completed the house."
Ober testified that he worked "seven days a week, a minimum of 12 hours everyday" to finish the improvements, and the circuit court found that the value of Ober's labor was $30.00 per hour; therefore, the circuit court found that Ober contributed $86,400 in labor. The circuit court also found that "[a]lthough title to the OVHP had been conveyed to Lighter, Ober remained in possession of the property, continued to make all the monthly mortgage payments on the property, continued to expend his own monies in completing the construction of the improvements and otherwise treated the property as his own."

D. Ober Demands Lighter Reconvey The OVHP And Lighter Refuses
Finally, on December 15, 1997, Ober demanded that Lighter reconvey his properties to him. When Lighter was unable to talk Ober out of his demand that the OVHP be reconveyed, Lighter renounced his prior representations that he would reconvey the [OVHP] to Ober when requested to do so. On December 30, 1997, Lighter transferred all of his right, title, and interest in the OVHP to Prescott as Trustee for CBIT Defendants.
On May 3, 1999, Ober and Plaintiff-Appellee William S. Gardner filed a Complaint to Avoid Transfers of Real Property for Fraud, Breach of Contract and for Specific Performance (the Complaint) in the circuit court against Lighter and CBIT Defendants.[8] Lighter thereafter filed an answer, a counterclaim, and a third-party complaint against Brown, James Allan Reitveld, and Ed James on May 25, 1999.[9] CBIT Defendants filed a joint answer, a counterclaim,[10] and a cross-claim against Wallis.

E. Testimonies Concerning Similar Deals Others Made With Lighter In The Past
During the trial of this case, the circuit court heard the testimonies of Beverly Frost (Frost) and Hideo Kobayashi (Kobayashi).

1. Frost's Experience With Lighter
Frost testified that in May 1995 she was introduced to Lighter by an acquaintance. Frost said there was a foreclosure judgment against her at the time, and that she had placed her property in a trust for her children. According to Frost, Lighter explained to her that there was a chance that her trust was not safe. Lighter showed Frost three properties which he indicated he had some interest in: one in Manoa, the Hawaiian Colony Hotel, and property on Spencer Street. Frost testified that Lighter proposed as follows:
[FROST:] . . . He said, you know, he was kind of formulating some ideas. He showed me those properties. And then we later met at Sizzler and sat down and had dinner and he proposed a transfer of properties. The way he could help me with my trust was to take these properties that he had in trust and do an exchange and switch with me. And therefore he could defend my trust and he could do it better than my own attorney, and that I would be  these other properties will be put in another trust. That would be the Aries Trust, which was the name of my trust at the time.
Q. Which was the name of your trust.
[FROST:] He assured me it was legal and safe, and that we could reverse any time I asked him to.
Q. He said you could reverse it anytime you ask him to?
[FROST:] Anytime I wanted to do I could back out of it.
Frost further testified that Lighter convinced her to convey her family home and an ocean front apartment into one of his trusts.[11] In exchange for the conveyance of her properties, Frost said that Lighter gave her an assignment of interest and notes. Soon thereafter, Frost became suspicious and asked Lighter to "reverse" the conveyance, but Lighter said "no. Frost stated that after she found out that Lighter was trying to put her electric bill under his name, and that he was working on assuming her mortgage, she filed a lawsuit against Lighter. The case was eventually settled.[12]

2. Kobayashi's Experience With Lighter
Kobayashi testified that he purchased a business from Noah Woo. According to Kobayashi, Lighter told him that Woo embezzled money from Kobayashi's new business and filed fraudulent tax returns. Lighter convinced Kobayashi that he could be held criminally liable for Woo's conduct, and that Kobayashi should transfer title of his home to Lighter. Kobayashi further testified that Lighter told him to put his property into a trust that Lighter had devised so that the Internal Revenue Service (IRS) would see "ownership of [Kobayashi's] house would  is in another name." When Kobayashi asked Lighter if he would return his property once everything is settled, Lighter said "yes" he would. On September 23, 1993, Kobayashi transferred title of his home to Lighter. Kobayashi, through his business, continued to pay the mortgage on his home.[13] In exchange for the conveyance, Lighter gave Kobayashi a paper he called "the extension lease on the Hawaiian Colony Hotel," and promissory notes secured by air rights.
Subsequently, Lighter conveyed the house into a series of trusts. Lighter then told Kobayashi and his wife to sign a release saying they would not sue Lighter. Kobayashi testified as to Lighter's reaction when he and his wife told Lighter that they would not sign the release:
[H]e was going to abandon any efforts to protect my interest before the grand jury or to the tax people, the Internal Revenue Service, that he was going to, in fact, testify against me and Mr. Woo, and that he was  my life  he was going to do everything he could to make my life miserable after that.
Two months after Kobayashi placed his property in Lighter's name, he filed a lawsuit against Lighter to get his property back.[14] Eventually, the parties reached a settlement and Lighter returned Kobayashi's property.

F. Ober's HRCP Rule 15(b) Motion
On February 23, 2001, both parties made their closing arguments. During his closing, Ober's counsel stated that it was his belief that a HRCP Rule 15(b)[15] motion was not necessary pursuant to HRCP Rule 54(c)[16] with regard to fashioning equitable relief for Ober instead of awarding damages. However, prior to his closing arguments, Ober's counsel had mentioned he intended to bring a HRCP Rule 15(b) motion at the close of evidence.[17] Because of the confusion, the circuit court asked counsel to clarify whether he was moving to amend the complaint to conform to the evidence pursuant to HRCP Rule 15(b).
The Court: And I want to be clear about whether or not you are making a motion under 15(b) in the event 54(c) does not appeal to the court. If you're making a motion under 15(b) to amend the pleadings to conform to the evidence, because the way I read that rule, the court may allow the pleadings to be amended and should do so freely upon motion. So I'm 
[Ober's counsel]: Yes, Your Honor.
The Court:  asking you whether or not you are making such a motion.
Ober's counsel answered affirmatively and made an oral motion to amend the complaint under HRCP Rule 15(b). The circuit court subsequently granted the motion.

G. Motion To Alter or Amend, Motion For Judgment As A Matter Of Law And For A New Trial
The Findings of Fact and Conclusions of Law and Decision and Order were issued on April 11, 2003. On May 7, 2003, the Final Judgment as to All Claims and All Parties was entered. The circuit court determined the value received from Ober by Lighter and CBIT Defendants while they had possession of the OVHP, and awarded Ober an equitable lien in the amount of $298,167.80 against the property.[18]
After the trial, Lighter and the CBIT Defendants each filed a motion to alter or amend the judgment, for a new trial, for judgment as a matter of law and/or for reconsideration (collectively the Motions). Ober responded by filing a memorandum in opposition to the Motions. Lighter then amended his Motions, and filed a reply to Ober's memorandum in opposition. On October 15, 2003, Lighter filed a "Supplement" to his reply to Ober's memorandum in opposition. On October 17, 2003, twelve days before the hearing on the Motions, CBIT Defendants filed a joinder to Lighter's amended Motions.[19] Finally, on October 29, 2003, a hearing on the Motions was held.[20] The Motions filed by both Lighter and CBIT Defendants were denied.
The Amended Final Judgment was entered on October 19, 2004[21] in favor of Lighter on Counts I, II, III, IV, and V of the Complaint. Counts VI and VII of the Complaint were dismissed without objection.[22] Judgment was entered in favor of Ober on counts I, II, III, IV, V, and VI of Lighter's counterclaim,[23] and on counts I and II of CBIT Defendants' counterclaim. The circuit court also noted that Defendant Wallis, as trustee of the VV trust was dismissed without objection prior to trial.[24] On November 17, 2004, CBIT Defendants filed a notice of appeal from the Amended Final Judgment. Lighter filed a notice of appeal from the Amended Final Judgment the following day. Ober subsequently filed a notice of cross-appeal on December 3, 2004.

II. STANDARDS OF REVIEW

A. Findings of Fact and Conclusions of Law
"In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." Chun v. Ed. of Trustees of the Employees' Retirement Sys. of the State of Hawai`i, 106 Hawai`i. 416, 430, 106 P.3d 339, 353, reconsideration denied, 106 Hawai`i 477, 106 P.3d 1120 (2005) (internal quotation marks, citations, and ellipses omitted) (quoting Allstate Ins. Co. v. Ponce, 105 Hawai`i 445, 453, 99 P.3d 96, 104 (2004)). "An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined `substantial evidence' as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Leslie v. Estate of Tavares, 91 Hawai`i 394, 399, 984 P.2d 1220, 1225 (1999) (some internal quotation marks and citations omitted) (quoting State v. Kotis, 91 Hawai`i 319, 328, 984 P.2d 78, 87 (1999)).
A COL is not binding upon an appellate court and is freely reviewable for its correctness. This court ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.
Chun, 106 Hawaii at 430, 106 P.3d at 353 (internal quotation marks, citations, and brackets omitted) (quoting Allstate Ins. Co. v. Ponce, 105 Hawai`i 445, 453, 99 P.3d 96, 104 (2004)).

B. Motion For Judgment As A Matter Of Law
In Nelson v. University of Hawai`i, 97 Hawai`i 376, 392 n.14, 38 P.3d 95, 112 n.14 (2001), this court stated that:
HRCP Rule 50 was recently amended and no longer refers to motions for directed verdict or for JNOV. HRCP Rule 50 (2000). The new rule, consistent with the Federal Rules of Civil Procedure (FRCP) Rule 50 (as amended in 1991), refers to motions for "judgment as a matter of law," and motions made after trial are referred to as "renewed motions for judgment as a matter of law." . . . [T]he change in terminology in the 1993 amendment to HRCP Rule 50 was not intended to result in a substantive change of existing Hawai`i law.
This court further stated that "[lit is well settled that a trial court's rulings on [motions for judgment as a matter of law] are reviewed de novo." Nelson, 97 Hawai`i at 393, 38 P.3d at 112 (citing In re Estate of Herbert, 90 Hawai`i 443, 454, 979 P.2d 39, 50 (1999)). When reviewing a motion for judgment as a matter of law, "the evidence and the inferences which may be fairly drawn therefrom must be considered in the light most favorable to the nonmoving party and [the] motion may be granted only where there can be but one reasonable conclusion as to the proper judgment." Id. (citing Carr v. Strode, 79 Hawai`i 475, 486, 904 P.2d 489, 500 (1995)).
Kramer v. Ellett, 108 Hawai`i 426, 430, 121 P.3d 406, 410 (2005).

C. Motion For A New Trial
"Both the grant and the denial of a motion for new trial is within the trial court's discretion, and we will not reverse that decision absent a clear abuse of discretion. Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai`i 214, 251, 948 P.2d 1055, 1092 (1997) (internal quotation marks and citation omitted). "A court abuses its discretion whenever it exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party." Abastillas v. Kekona, 87 Hawai`i 446, 449, 958 P.2d 1136, 1139 (1998) (internal quotation marks, citation, and ellipsis omitted).

D. Motion To Alter or Amend Judgment
"This court reviews a circuit court's decision to grant a motion to alter a judgment pursuant HRCP Rule 59(e) for abuse of discretion." Roxas v. Marcos, 89 Hawai`i 91, 115, 969 P.2d 1209, 1233 (1998)(citing Gossinger v. AOAO of the Regency of Ala Wai, 73 Haw. 412, 425, 835 P.2d 627, 634 (1992)).

E. Admission of Evidence
[D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.
Kealoha v. County of Hawaii, 74 Haw. 308, 319-20, 844 P.2d 670, 676 (1993). "Under the right/wrong standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." State v. Timoteo, 87 Hawai`i 108, 113, 952 P.2d 865, 870 (1997) (internal quotation marks and citation omitted).

F. Motion in Limine
Because "the granting or denying of a [MIL] is within the trial court's inherent power to exclude or admit evidence, we review the court's ruling for the abuse of discretion standard. State v. Kealoha, 95 Hawai`i 365, 379, 22 P.3d 1012, 1026 (App. 2000) (internal quotation marks, citations, and brackets omitted).
However, when the trial court's order granting a MIL is an evidentiary decision based upon relevance, the standard of review is the /wrong standard. Ass'n Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawai`i 97, 110, 58 P.3d 608, 621 (2002).
As the Hawai`i Supreme Court has noted:
[D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.
Walsh v. Chan, 80 Hawai`i 212, 215, 908 P.2d 1198, 1201 (1995) (quoting Craft v. Peebles, 78 Hawai`i 287, 293-94, 893 P.2d 138, 144-45 (1995)).

G. Motion To Alter or Amend Judgment
A motion made pursuant to HRCP Rule 59(e) to alter or amend the judgment is reviewed under the abuse of discretion standard. Gossinger v. Assoc. of Apartment Owners of the Regency of Ala Wai, 73 Haw. 412, 425, 835 P.2d 627, 634 (1992).

H. Attorney's Fees, Costs, and Prejudgment Interest
This court reviews the denial and granting of attorney's fees under the abuse of discretion standard. The same standard applies to this court's review of the amount of a trial court's award of attorney's fees. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant.
Chun, 106 Hawai`i 416, 431, 106 P.3d 339, 354, reconsideration denied, 106 Hawai`i 477, 106 P.3d 1120 (internal quotation marks, citations, brackets, and ellipses omitted; block quote format changed). In addition,
[HRCP] 54 (d) provides that, "[e]xcept when express provision therefore is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" "The award of taxable cost is within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion." Bjornen v. State Farm Fire and Cas. Co., 81 Hawai`i 105, 107, 912 P.2d 602, 604 (App. 1996).
Wong v. Takeuchi, 88 Hawai`i 46, 52, 961 P.2d 611, 617 (1998).
An award of prejudgment interest is reviewed for abuse of discretion. Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 137, 839 P.2d 10, 36 (1992). "Generally, to constitute an abuse [of discretion,] it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." State v. Sacoco, 45 Haw. 288, 292, 367 P.2d 11, 13 (1961).
TRI-S Corp. v. Western World Ins. Co., 110 Hawai`i 473, 489, 135 P.3d 82, 98 (2006).

I. Punitive Damages
Generally, we will not reverse a decision to grant or deny punitive damages absent a clear abuse of discretion. Amfac Inc. v. Waikiki Beachcomber Investment Co., 74 Haw. 85, 138, 839 P.2d 10, 37 (1992).

III. DISCUSSION

A. The Circuit Court Erred In Concluding That Ober Failed To Prove That Lighter Fraudulently Induced Him To Convey The OVHP And The SSP
On appeal, Ober challenges COL No. 4, which provided in pertinent part that Ober "failed to prove those causes of action as set forth in Count I, [and] Count II ... of the Complaint[.]" Ober contends that the circuit court erred in concluding that he failed to prove that Lighter fraudulently induced him to convey the OVHP. We agree.
"A fraudulent misrepresentation, even though it relates only to a portion of a contract, furnishes a complete defense to the enforcement of the whole." Cummins v. Cummins, 24 Haw. 116, 121 (1917).
To constitute fraudulent inducement sufficient to invalidate the terms of a contract, there must be (1) a representation of a material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to [his or her] damage.
The false representation, to be actionable, must relate to a past or existing material fact, and not to the happening of future events. Generally, fraud cannot be predicated upon statements that are promissory in their nature at the time they are made and that relate to future action or conduct. A promise relating to future action or conduct will be actionable, however, if the promise was made without the present intent to fulfill the promise.
Hawai`i Community Federal Credit Union v. Keka, 94 Hawai`i 213, 230, 11 P.3d 1, 18 (2000)(citing Honolulu Fed. Say. & Loan Ass'n v. Murphy, 7 Haw. App. 196, 201-02, 753 P.2d 807, 811-12 (1988)).
"An express averment of intent to defraud is not required, but it is sufficient if the existence of the intent can be clearly inferred from the allegations." Notley v. Notley, 23 Haw. 724, 737 (1917) (citation omitted).
In Notley, the defendant secured from his children a conveyance of property upon his promise to form a corporation and to transfer the property thus obtained along with his own property to the corporation. Defendant never formed the corporation, yet he retained the property his children transferred to him. The children brought suit in equity to cancel the deeds that transferred the property, and to return the parties to status quo. The circuit judge decided the case upon the theories of failure of consideration and undue influence, but did not address the issue of fraud. However, on appeal, the Supreme Court of the Territory of Hawai`i (supreme court) found the defendant obtained the property by fraud, and upheld the lower court's decision on that ground. Upon reviewing the facts of the case, the supreme court reasoned,
It must appear that [defendant], at the time he assured complainants of his intention to form a corporation, as alleged in the bill of complaint, had, in fact, no intention of so doing. This vital question seems to have been entirely overlooked by the trial judge. He made no findings respecting this phase of the case although there was ample evidence to justify him in doing so. . . .
The failure of the trial judge to make any findings upon the subject compels us to do so and we therefore find from the evidence that at the time [defendant] promised complainants herein that he would form a corporation for the purposes and under the circumstances alleged in the bill of complaint, that he did so with a premeditated design to cheat, defraud and deceive the complainants to execute the deed. It was clearly proven that the respondent agreed to form a corporation and to convey to it the property in question. That promise was the real consideration and inducement for the conveyance. It appears that on two or three occasions he spoke in a casual way about forming a corporation but he took no step toward forming one, and in his answer and upon the witness stand he positively denied having made the promise. . . . "To profess an intent to do or not to do when the party intends the contrary is as clear a case of misrepresentation and of fraud as could be made."
Id. at 736 (citation omitted).
Similarly here, we conclude Lighter fraudulently induced Ober to convey the OVHP and to assign the Lease and Option to Purchase the SSP.

1. Lighter Fraudulently Induced Ober To Convey The OVHP
Here, there was substantial evidence of fraud. The circuit court found that Lighter promised Ober and Wallis that "he would reconvey the OVHP to Ober when requested to do so by Ober. Ober testified that Lighter told him "`I don't want your property. I have no interest in your property. I have no interest in your business. I don't even want to come to the Big Island. I'll put it back in your name any time on demand.'" Wallis also testified that Lighter promised that he would reconvey to OVHP to Ober.
Second, Ober testified that he initially refused to transfer the title to the OVHP to Lighter. However, Lighter repeatedly reassured him that he did not want the OVHP and that he would "trade paper back" and put the title to the OVHP back in Ober's name any time on demand.
Third, both Ober and Wallis testified that they relied upon Lighter's promise to reconvey the OVHP when they agreed to transfer its title to Lighter. Ober said that he agreed to the transfer of the OVHP and instructed Wallis to deed the title to the OVHP to Lighter in reliance upon Lighter's promise to reconvey the property to him. Wallis testified that if Lighter did not promise to reconvey the OVHP back to Ober, he would not have put the title in Lighter's name.
Finally, at trial, Ober presented testimony by both Frost and Kobayashi that Lighter had attempted to defraud them of their property in the past. Both Frost and Kobayashi testified that Lighter told them that he could help them with their legal problems. Lighter convinced them to convey their property into one of his trusts so that their property could not be reached by either a creditor or the IRS. In exchange for the conveyance of their property, Lighter gave Frost and Kobayashi promissory notes, and also promised that he would reconvey the property to them anytime they asked him to. However, both testified that Lighter refused to reconvey their property back to them when they sought to have it returned.
Ober testified to a similar experience with Lighter. Ober explained that,
[W]hile [Ober] was still under the threat of criminal charges, [Lighter] said that if the case didn't get dismissed and [Ober] went to trial, and [he] still owned the property, [he] would be guaranteed to lose it. . . . And [Lighter] suggested this plan of where [Ober would] put [his] property in [Lighter's] name.
The circuit court found that Lighter represented to Ober that "in order for him to represent Ober and the OVHP in the Livingston case, it would be necessary for Ober to convey title to the OVHP to Lighter." When Ober requested that Lighter give him a quitclaim deed reconveying the OVHP to him in the event Lighter did not reconvey the property when asked, Lighter adamantly refused.
The circuit court found that "Lighter represented to both Wallis and Ober that he would reconvey the property to Ober when requested to do so by Ober. However, Ober testified that when he asked Lighter to reconvey the OVHP, Lighter denied ever making such a promise. Instead, Lighter transferred all of his right, title, and interest in the OVHP to Prescott as Trustee for CBIT Defendants.
The strong similarities in Lighter's conduct toward Frost, Kobayashi, and Ober establish modus operandi by Lighter, and support the conclusion that Lighter did not intend to fulfill his promise to reconvey the property to Ober when he made it.
In sum, all the elements of fraudulent inducement were clearly established by the evidence: Lighter made a promise to Ober that he would reconvey the OVHP whenever Ober asked, Lighter made the promise without the present intent to fulfill it, the promise was made for the purpose of inducing Ober to convey the OVHP, and Ober relied upon the promise when conveying the OVHP to Lighter. Therefore, the circuit court erred in concluding (in COL No. 4) that Ober failed to prove that Lighter fraudulently induced him to convey the OVHP. Accordingly, Ober is entitled to rescission of the contract conveying the OVHP.[25] See Exotics, Hawaii-Kona, Inc. v. E.I. DuPont De Nenours & Co., 116 Hawai`i 277, 172 P.3d 1021 (2007) ("Hawai`i courts are clearly in accord with the basic contract principle that a party defrauded on a contract may seek rescission of the contract.").

2. Lighter Fraudulently Induced Ober To Assign His "Lease And Option To Purchase" The SSP
The circuit court rescinded the lease and option to purchase the SSP on the ground that "Ober did not receive any benefit from the Defendants in exchange for the value received." CBIT Defendants argue that the circuit court's decision to cancel the lease and option to purchase the SSP was "clearly excessive." We conclude that there was substantial evidence of fraudulent inducement with regard to the SSP which warrants recision.
First, Ober testified that "Shortly after the November 20th, 1996 conveyance of the [OVHP], um, [Lighter] said [Ober] needed to do something to protect the [SSP]." Lighter then prepared a lease and option to purchase the SSP, which provided that Ober was the lessor leasing the property to the Ronald Alan Ober Trust. In April of 1997, Lighter told Ober that the lease to Ober was not good enough and that Ober needed to assign the SSP to Lighter so that Lighter could protect it. Ober testified that he subsequently assigned the lease and option to purchase to IFT at Lighter's direction.
Second, the circuit court found that Lighter proposed to give the RAOT additional "commercial paper" to make the deal look real and represented that they could always "trade back paper" and undo the deal whenever Ober requested.
Third, Ober testified that he "was totally reliant on [Lighter] trading paper back" and his statement that "[h]e had no interest in my property. No interest in my business and still didn't even wanna come to the Big Island. The circuit court found that Ober believed Lighter and relied upon his representation that the assignment of the lease and option to purchase would be undone by "trading back paper" whenever Ober requested. Lighter thereafter prepared an assignment of lease and option to purchase and an extension of lease and option to purchase and an agreement which Ober executed on April 10, 1997.
Finally, as discussed above, Ober presented testimony by both Frost and Kobayashi that Lighter had attempted to defraud them of their property in the past.
Accordingly, we conclude that the circuit court's decision rescinding the lease and option to purchase with regard to the SSP was correct because the evidence clearly establishes that Ober was fraudulently induced to enter into that agreement.[26]

B. Lighter's And CBIT Defendants' Challenges To The FsOF Are Without Merit
In his points of error on appeal, Lighter challenges FsOF Nos. 12, 18-21, 44, 23, 32-34, 28, 30, 7, 52, 36, and 37. CBIT Defendants also challenges FsOF 7, 8, 11, 12, 18, 34, 37, 41, and 64. However, Lighter's and CBIT Defendants' challenge to these FsOF are without merit, as the record on appeal contains substantial evidence to support these findings. Leslie v. Estate of Tavares, 91 Hawai`i 394, 399, 984 P.2d 1220, 1225 (1999).
Accordingly, FsOF Nos. 7, 8, 11, 12, 18-21, 23, 28, 30, 32-34, 36, 37, 41, 44, 52, and 64 are not clearly erroneous. Chun v. Bd. of Trustees of the Employees' Retirement Sys. of the State of Hawai`i 106 Hawai`i 416, 430, 106 P.3d 339, 353 (2005).

C. The Circuit Court Correctly Denied CBIT Defendants' Motion For Judgment As A Matter Of Law and Lighter's Motion for Directed Verdict
CBIT Defendants argue that Ober was not entitled to equitable relief; thus, CBIT Defendants contend their motion for judgment as a matter of law should have been granted. Lighter similarly contends that the circuit court erred in "not granting the CBIT Defendants' motions for directed verdict regarding all of Ober's claims, joindered [sic] by Lighter. . . ."
It is well settled that a trial court's rulings on [motions for judgment as a matter of law] are reviewed de novo. Nelson v. University of Hawai`i, 97 Hawai`i 376, 393, 38 P.3d 95, 112 (2001) (citing In re Estate of Herbert, 90 Hawai`i 443, 454, 979 P.2d 39, 50 (1999)). When reviewing a motion for judgment as a matter of law, `the evidence and the inferences which may be fairly drawn therefrom must be considered in the light most favorable to the nonmoving party and [the] motion may be granted only where there can be but one reasonable conclusion as to the proper judgment.' Id. (citing Carr v. Strode, 79 Hawai`i 475, 486, 904 P.2d 489, 500 (1995)).
Kramer v. Ellett, 108 Hawai`i 426, 430, 121 P.3d 406, 410 (2005).
As a basis for its assertion, CBIT Defendants argue that Ober is precluded from equitable relief by the doctrines of "unclean hands" and "in pari delicto." Generally, "[t]he doctrine of `unclean hands' will not allow a party to profit by his own misconduct. The concept is based upon `considerations that make for the advancement of right and justice' and will not be invoked when to do so would work injustice and wrong." Shin v. Edwin Yee, Ltd., 57 Haw. 215, 231, 553 P.2d 733, 744 (1976)(citing Jones v. Jones, 30 Haw. 565 (1928)) (internal citation omitted). "A court's decision to apply an equitable doctrine of relief, such as the `unclean hands' doctrine, is a matter within its discretion. 7's Enterprises, Inc. v. Del Rosario, 111 Hawai`i 484, 489, 143 P.3d 23, 28 (2006) (citing Ueoka v. Szymanski, 107 Hawai`i 386, 393, 114 P.3d 1125, 1133 (2006)).
Applying the doctrine of unclean hands to prevent Ober from recovering the OVHP, which Lighter fraudulently induced him to convey, would work an injustice and wrong. First, as discussed above, Lighter fraudulently induced Ober to convey the OVHP to him. Second, if the OVHP remains in the possession of Lighter and the CBIT Defendants, they will profit from the post-transfer mortgage payments, permits, and improvements Ober made, as well as the benefit of possessing the OVHP, all without having paid for them. As such, it is inappropriate to apply the doctrine of unclean hands to prevent Ober from rescinding the contract conveying the OVHP to Lighter.
Next, CBIT Defendants assert the doctrine of in pari delicto should apply to bar any recovery by Ober. Generally, "where the parties are in pari delicto, courts will not aid one party in recovering from the other." Palakiko v. County of Maui, 22 Haw. 759, 763 (1915). However, "[t]hough both parties to the transaction are participes criminis, still if they are not in pari delicto, the one less guilty will not be denied the ordinary assistance of the courts." Goo Yee v. Rosenberg, 21 Haw. 513, 517 (1913) (citation omitted). The doctrine of in pari delicto "generally requires that the plaintiff be equally culpable in the transaction producing the defendant's liability." Young v. Kwock, 52 Haw. 273, 277, 474 P.2d 285, 288 (1970).
Applying these principles here, the circuit court did not err in finding that Ober was entitled to equitable relief. First, the circuit court found that Lighter represented to Ober that he had considerable experience representing others who had legal problems similar to Ober's, and that "although he was not a licensed attorney, he was better and more capable than any of the overpaid real attorneys because he was not subject to the same rules as were licensed attorneys[.] Second, the circuit court found that Lighter represented to Ober that "it would be necessary for Ober to convey title to the OVHP to Lighter so that building permits for the improvements to the OVHP could be obtained in Lighter's name." Finally, Ober testified that Lighter insisted that Ober convey the OVHP to him in exchange for the promissory notes secured by the air rights because otherwise the conveyance "truly [would be] a fraudulent conveyance[,] which suggests that Lighter's representation was that his scheme was otherwise within the law.
That a party may not urge his ignorance of the law as an excuse or palliation of a crime, or even as a fault, we may admit; that he may not, by reason of such ignorance, or mistake, obtain any right or advantage over another, we may admit; but we do not admit, that such other may obtain or secure an unjust advantage over him, by reason of his ignorance or mistake, even of the law. We agree that men should not complain of the consequence of their deliberate and voluntary acts; but we do not agree, that acts performed under the influence of essential and controlling mistakes, are voluntary, within the meaning of the maxim referred to. And we say, that neither maxims of law, nor fictions of law, should be so applied as to work manifest injustice.
Goo, 21 Haw. at 519-20 (internal quotation and citation omitted).
Here, Lighter portrayed himself as someone familiar with the law. Ober was led to believe that it was necessary for him to convey the OVHP to Lighter in order to obtain the building permits to complete construction on the OVHP, and in order for Lighter to litigate matters concerning the OVHP. Even if Ober's motive for entering into the transaction was to evade the laws regarding building permits or was otherwise improper, that does not mean that Lighter was free to defraud Ober of his property in these circumstances. Therefore, the doctrine of in pari delicto does not apply given the facts of this case.
With the evidence taken in the light most favorable to the non-moving party, we conclude that neither the doctrine of unclean hands nor the doctrine of in pari delicto apply to bar Ober from recovery; thus, the circuit court was correct in denying the motions.

D. The Circuit Court Did Not Abuse Its Discretion in Denying Lighter's and CBIT Defendants' Motion for a New Trial.
The CBIT Defendants and Lighter contend that the motion for a new trial should have been granted on grounds that (1) their evidence manifestly out weighs the evidence introduced by Ober, and (2) the verdict was excessive. Upon a review of the record and the Rules of the Circuit Court for the State of Hawai`i (RCCH), we conclude that the circuit court erred in allowing the CBIT Defendants to raise a new argument in their joinder to Lighter's amended motion for a new trial. Nevertheless, because the circuit court denied CBIT Defendants' motion for a new trial, we affirm its decision based upon the evidence and arguments that were properly presented.
"Both the grant and the denial of a motion for new trial is within the trial court's discretion, and we will not reverse that decision absent a clear abuse of discretion." Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai`i 214, 251, 948 P.2d 1055, 1092 (1997) (internal quotation marks and citation omitted). "A court abuses its discretion whenever it exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party. Abastillas v. Kekona, 87 Hawai`i 446, 449, 958 P.2d 1136, 1139 (1998) (internal quotation marks, citation, and ellipsis omitted).
Under RCCH Rule 7(a), the CBIT Defendants' joinder to Lighter's amended motion for a new trial and the arguments contained therein should not have been considered by the circuit court. RCCH Rule 7(a) requires that "motion[s] shall be filed and served on all parties not less than 18 days before the date set for the hearing." Here, the joinder was filed on October 17, 2003, which was only twelve days before the hearing on the motions held on October 29, 2003. As such, Ober was not given the time period prescribed under RCCH 7(a) to respond to CBIT Defendants' argument. Thus, a ruling in favor of CBIT Defendants based upon the arguments presented in their late motion would be unduly prejudicial to Ober, and an abuse of discretion by the circuit court.
Accordingly, we review the circuit court's denial of CBIT Defendants' and Lighter's amended motion for a new trial without considering the new argument[27] raised in the CBIT Defendants' joinder to Lighter's amended motion for a new trial. After considering the evidence presented by both parties, we conclude that the circuit court did not abuse its discretion in denying the amended motion for a new trial. The evidence presented by CBIT Defendants and Lighter did not manifestly out weigh Ober's evidence so as to warrant the grant of a new trial. Therefore, we conclude the circuit court did not abuse its discretion in denying Lighter and CBIT Defendants' Motion for a New Trial.

E. The Circuit Court Did Not Abuse Its Discretion In Denying Lighter's Motion To Alter or Amend The Judgment
Lighter contends the circuit court erred in failing to grant Lighter's motion to alter or amend the judgment. We review a circuit court's decision to grant a motion to alter a judgment pursuant to HRCP Rule 59 (e) for abuse of discretion. Roxas, 89. Hawai`i at 115, 969 P.2d at 1233. The circuit court abuses its discretion if it "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc., 74 Haw. at 114, 839 P.2d at 26.
The circuit court denied Lighter's motion to alter or amend the judgment on grounds that it found there was a "reasonable basis for Judge Amano's award of the equitable lien. The court does not feel it was any kind of clerical error on the part of Judge Amano." The circuit court clarified the calculation of the equitable lien, and the amount granted corresponded with the amount the circuit court believed was warranted. The circuit court did not clearly exceed the bounds of reason nor did it disregard the rules or principles of the law in denying Lighter's motion to alter or amend the judgment. Therefore, we conclude the circuit court did not abuse its discretion in denying Lighter's motion to alter or amend the judgment. In any event, in view of our conclusion that Ober is entitled to rescission, this argument is moot.

F. The Circuit Court's Rulings on the Motions in Limine
Lighter challenges the circuit court's orders on the many MsIL. First, Lighter states that the circuit court erred in partially granting Ober's opposition to Lighter's MIL regarding his allegations of Ober's prior bad acts of money laundering, drug smuggling, and other crimes.[28] Second, Lighter contends that the circuit court erred in denying Lighter's MIL for "an order precluding the plaintiffs and their witnesses from presenting any evidence or testimony that contradicts the terms of $17,100 second mortgage and note released on main volcano property." Third, Lighter states that the circuit court erred in denying his MIL regarding "exclusion of documents and testimony pertaining to Beverly Frost[.]" Fourth, Lighter contends that the circuit court erred in denying the CBIT Defendants' MIL to preclude Ober, Gardner, and their witness from presenting any evidence or testimony that contradicts the terms of the warranty deed dated November 15, 1996. Fifth, Lighter asserts that the circuit court erred in denying CBIT Defendant's MIL to preclude evidence or testimony in derogation or violation of the statute of frauds. Sixth, Lighter contends that the circuit court erred in denying CBIT Defendants' MIL to preclude evidence and testimony that contradicts Ober's prior testimony. Seventh, Lighter asserts that the circuit court erred in denying CBIT Defendants' MIL to preclude evidence or testimony that contradicts the validity of the lease and option to purchase. Finally, Lighter contends that the circuit court erred in denying the CBIT Defendants' MIL to preclude the introduction of evidence and testimony related to Lighter's prior bad acts.[29]
However, Lighter fails to properly argue these points of error. In his opening brief, Lighter cites to the alleged errors yet he fails to state why the circuit court's rulings on the disputed MsIL are erroneous. To the extent that an argument can be discerned, it appears that Lighter is arguing that the circuit court was biased against him. But, other than citing to the MsIL he claims are erroneous, Lighter does not present any argument or authority on this issue. Accordingly, these points of error are deemed waived. HRAP Rule 28(b)(7); See International Say. and Loan Ass'n, Ltd. v. Carbonel, 93 Hawai`i 464, 473, 5 P.3d 454, 463 (App. 2000) ("An appellate court need not address matters as to which the appellant has failed to present a discernible argument.").

G. The Circuit Court's Rulings on the Admissibility of Certain Exhibits
Lighter contends that the circuit court erred in denying the admission of exhibits 1003, 1006, 1007, 1009, 707, 1100, and CBIT joins in contesting the denial of exhibits 707 and 1100.
However, Lighter failed to properly argue the circuit court's admission of exhibits 1003, 1006, 1007, and 1008. In his opening brief Lighter states that the circuit court "wrongly rejected the certified copies of [exhibits] 1003, 1006, 1007, and 1009. . . . based on hearsay even though these documents were presented by the Hawaii [sic] County prosecutor in Ober's criminal cases." In support of this contention Lighter asserts that "these exhibits conclusively demonstrate and/or rule that Ober intended on hiring unlicensed contractors and violating the preliminary injunction." However, a recitation of the circuit court's actions, and general conclusions without argument, do not provide a discernable argument. Accordingly, Lighter's contentions regarding exhibits 1003, 1006, 1007, and 1009 are deemed waived. HRAP Rule 28(b)(7), Carbonel, 93 Hawai`i at 473, 5 P.3d at 463.
Additionally, neither Lighter or the CBIT Defendants provide a discernable argument regarding the circuit court's refusal to admit exhibits 1100 and 707. Id. CBIT Defendants and Lighter also failed to provide "a quotation of the grounds urged for the objection[.]" HRAP Rule 28(b)(4)(A). Accordingly, CBIT Defendants' and Lighter's contentions regarding exhibits 1100 and 707 are also waived.

H. The Circuit Court Did Not Convince Ober to Make a HRCP Rule 15(b) Motion and Did Not Err In Granting The HRCP Rule 15(b) Motion.
The CBIT Defendants contend that the circuit court erred in convincing Ober to make a HRCP Rule 15(b) motion, and further erred in granting that motion. After reviewing the transcripts of the proceeding, we conclude the circuit court did not inappropriately convince Ober to make a HRCP Rule 15(b) motion; rather, the circuit court was simply clarifying whether or not Ober's counsel was making a HRCP Rule 15(b) motion.
During Ober's counsel's closing arguments, he explained to the circuit court why he thought HRCP Rule 54(c) enabled the circuit court to fashion a remedy without a HRCP Rule 15(b) motion. Because Ober's counsel had previously mentioned a HRCP Rule 15(b) motion, the circuit court asked him to clarify whether he was moving to amend the complaint to conform to the evidence as allowed under HRCP Rule 15(b).
The Court: And I want to be clear about whether or not you are making a motion under 15(b) in the event 54(c) does not appeal to the court. If you're making a motion under 15(b) to amend the pleadings to conform to the evidence, because the way I read that rule, the court may allow the pleadings to be amended and should do so freely upon motion. So I'm
[Ober's counsel]: Yes, Your Honor.
The Court:  asking you whether or not you are making such a motion.
After Ober's counsel answered that he was in fact making the motion, the circuit court granted the motion. We find nothing inappropriate in the circuit court's questioning.
A circuit court's decision on a HRCP Rule 13 (b) motion will not be set aside unless the circuit court abused its discretion. Hamm v. Merrick, 61 Haw. 470, 473, 605 P.2d 499, 502 (1980). An abuse of discretion occurs if the circuit court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc. 74 Haw. at 114, 839 P.2d at 26. There is nothing in the record to indicate that the circuit court abused its discretion in granting the HRCP Rule 15(b) motion. The factual issues upon which the equitable remedies were being requested were pled in the complaint; thus, Lighter and CBIT Defendants had a fair opportunity to defend against those facts and issues. The grant of Ober's HRCP Rule 15(b) motion did not prejudice the defendants, nor did the circuit court clearly exceed the bounds of reason or disregard rules or principles of law or practice in granting the motion. Therefore, we conclude the circuit court did not err in granting Ober's HRCP Rule 15(b) motion. In any event, in view of our conclusion that Ober is entitled to rescission, this argument is moot.

I. The Circuit Court Did Not Abuse Its Discretion in Awarding Ober Costs and Attorney's Fees

1. Ober's Action Was In The Nature Of Assumpsit.
CBIT Defendants and Lighter contend that Ober's claims against them were "non-assumpsit" actions; thus, he is not entitled to attorney's fees. "Ordinarily counsel fees are not recoverable against the losing party in the absence of statute, agreement or stipulation authorizing the allowance thereof." Shoemaker v. Takai, 57 Haw. 599, 604, 561 P.2d 1286, 1289 (1977). "This rule was equally applicable whether the pending controversy was at law or in equity." Id. (citing Dress Mfg. Co. v. Cadinha, 33 Haw. 456, 1935 (1935)). Here, however, attorney's fees are recoverable under Hawaii Revised Statute (HRS) § 607-14 (Supp. 2004). HRS § 607-14 allows for the imposition of attorney's fees in actions in the nature of assumpsit. Id.
In this case, Ober's action was, at first, a prayer for rescission of the contract conveying the OVHP. Then, upon a HRCP Rule 15(b) motion, Ober amended his complaint to seek restitution for unjust enrichment based on the improvements and mortgage payments Ober made on the OVHP after its conveyance. The circuit court granted Ober's prayer for restitution and gave him an equitable lien on the OVHP, on the basis that Lighter and the CBIT Defendants would otherwise be unjustly enriched by Ober's payments and improvements. The circuit court then awarded Ober attorney's fees as the prevailing party.
"[A]n action for rescission of an agreement and for restitution of monies paid on account of the agreement is an action in the nature of assumpsit within the meaning of HRS § 607-14." Hong v. Kong, 5 Haw. App. 174, 183-84, 683 P.2d 833, 841 (1984) (internal quotation omitted). Although we vacate the circuit court's order granting Ober an equitable lien, and instead conclude that Ober is entitled to rescission, we further conclude that HRS § 607-14 remains applicable in awarding Ober attorney's fees because this was an action in the nature of assumpsit; therefore, the circuit court did not err in awarding Ober attorney's fees under HRS § 607-14.

2. Ober Is The Prevailing Party
In addition to the CBIT Defendants' argument that Ober's claims were not in the nature of assumpsit, the CBIT Defendants also argue that Ober is not the prevailing party in this case; thus, he is not entitled to costs or attorney's fees. We disagree. "[W]here a party prevails on the disputed main issue, even though not to the extent of his original contention, he will be deemed to be the successful party for the purpose of taxing costs and attorney's fees." Food Pantry, Ltd. v. Waikiki Business Plaza, Inc., 58 Haw. 606, 620, 575 P.2d 869, 879 (1978).
Here, the circuit court concluded that Lighter and the CBIT Defendants were unjustly enriched and awarded Ober an equitable lien on the OVHP. The two main issues of this case were whether Ober is entitled to rescission of the contract conveying the OVHP and if not, whether Lighter and the CBIT Defendants were unjustly enriched by Ober, thereby entitling Ober to an equitable lien on the OVHP. Because Ober was ultimately granted the equitable lien on the OVHP, the circuit court concluded that he is the prevailing party for the purpose of taxing costs and attorney's fees. Although we vacate the circuit court's order granting. Ober an equitable lien, we nonetheless conclude that Ober is entitled to rescission of the contract conveying the OVHP to Lighter. Thus, Ober remains the prevailing party.

3. Conclusion
This court reviews the denial and granting of attorney's fees under the abuse of discretion standard. The same standard applies to this court's review of the amount of a trial court's award of attorney's fees. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant.
Chun, 106 Hawai`i at 431, 106 P.3d at 354 (internal quotation marks, citations, brackets, and ellipses omitted; block quote format changed).
In addition,
[HRCP] 54(d) provides that, "[e]xcept when express provision therefore is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs(.]" "The award of taxable cost is within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion." Biornen v. State Farm Fire and Cas. Co., 81 Hawai`i 105, 107, 912 P.2d 602, 604 (App. 1996).
Wong, 88 Hawai`i at 52, 961 P.2d at 617 (some brackets, quotations, and citations in original).
There is nothing in the record to indicate the circuit court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice in granting Ober the award of costs and attorney's fees. Therefore, we conclude the circuit court did not abuse its discretion in awarding Ober costs and attorney's fees as the prevailing party.

J. The Circuit Court Did Not Abuse Its Discretion In Granting Ober's Motion For An Award of Prejudgment Interest
Lighter contends that the circuit court erred by granting Ober's motion for an award of prejudgment interest.
An award of prejudgment interest is reviewed for abuse of discretion. Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 137, 839 P.2d 10, 36 (1992). "Generally, to constitute an abuse [of discretion,] it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." State v. Sacoco, 45 Haw. 288, 292, 367 P.2d 11, 13 (1961).
TRI-S Corp. v. Western World Ins. Co., 110 Hawai`i 473, 489, 135 P.3d 82, 98 (2006).
Lighter fails to show that the circuit court clearly exceeded the bounds of reason or disregarded the rules or principles of law or practice in granting Ober an award of prejudgment interest. Therefore, we conclude that the circuit court did not abuse its discretion.

K. The Circuit Court Did Not Abuse Its Discretion In Declining To Award Ober Punitive Damages
Finally, Ober contends that the circuit court erred in concluding that an award of punitive damages was not warranted in this case. Generally, we will not reverse a decision to grant or deny punitive damages absent a clear abuse of discretion. Amfac, Inc., 74 Haw. at 138, 839 P.2d at 37.
Because "the purpose of punitive damages is not compensation of the plaintiff but rather punishment and deterrence, they are awarded only when the egregious nature of the defendant's conduct makes them appropriate." Masaki v. General Motors Corp., 71 Haw. 1, 6, 780 P.2d 566, 570 (1989). "Something more than the mere commission of a tort is always required for punitive damages." Association of Apartment Owners of Newtown Meadows ex rel. its Bd. Of Directors v. Venture 15, Inc., 2007 WL 2181605 (2007) (internal citation omitted). "To justify an award of punitive damages, a positive element of conscious wrongdoing is always required." Id. at 63 (citation omitted). "In determining whether an award of punitive damages is appropriate, the inquiry focuses primarily upon the defendant's mental state, and to a lesser degree, the nature of his conduct." Id. "The plaintiff must prove by clear and convincing evidence that the defendant acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences." Amfac, Inc., 74 Haw. at 138, 839 P.2d at 37.
Clear and convincing evidence generally requires evidence that "will produce in the mind of a reasonable person a firm belief as to the facts sought to be established." Almeida, v. Almeida, 4 Haw. App. 513, 518, 669 P.2d 174, 179 (1983) (citation omitted).
Thus "clear and convincing" evidence may be defined as an intermediate standard of proof greater than a preponderance of the evidence, but less than proof beyond a reasonable doubt required in criminal cases. It is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established, and requires the existence of a fact be highly probable.
Masaki, 71 Haw. at 15, 780 P.2d at 574 (1989).
Here, the circuit court concluded "that there was insufficient proof to [warrant] an award of punitive damages in Ober's favor and against Defendant Lighter and punitive damages will not therefore be awarded in this case." "[E]ven the finding of fraud of appellant on appellee will not necessarily result in an award of punitive damages. Punitive damages are in no way compensatory and are not available as a matter of right. An award of punitive damages is purely incidental to the cause of action. They may be awarded by the grace and gratuity of the law." Kang v. Harrington, 59 Haw. 652, 660, 587 P.2d 285, 291 (1978).
We cannot say that the circuit court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice in concluding that the evidence did not warrant an award of punitive damages. Therefore, we conclude the circuit court did not abuse its discretion in declining to award Ober punitive damages against Lighter.

IV. CONCLUSION
We vacate the October 19, 2004 Amended Final Judgment as to All Claims and All Parties and remand for proceedings consistent with this opinion.
NOTES
[1] The Honorable Riki May Amano presided over the trial.

The Honorable Glenn S. Hara signed the Amended Final Judgment As To All Claims And All Parties and presided over the hearings on Ober's motion for attorney's fees and costs, and Lighter's motion to strike Ober's motion for attorney's fees and costs.
[2] In their opening brief, CBIT Defendants attempt to argue numerous issues not properly presented in their points of error section. The court will not consider those arguments. See Hawaii Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(D). Additionally, because CBIT Defendants failed to argue points of error 3, 6, and 13, those points are deemed waived. HRAP Rules (28)(b)(4) and (7). Also, CBIT Defendants' answering brief contains a section entitled "The Prescott Cross-Appellees' Counter-Statement of Points of Error," which includes numerous points of error not presented in CBIT Defendants' opening brief. However, HRAP Rule 28(c), which governs the form of an appellee's answering brief, states that answering briefs "shall be of like character as that required for an opening brief except that no statement of points shall be required, and no other section is required unless the section presented in the opening brief is controverted." In contrast, HRAP Rule 28(h) (4) states that the appellant's opening brief must contain "[a] concise statement of points of error . . . ." Accordingly, as appellants, CBIT Defendants had a duty to present their points of error in their opening brief, and thus the court will not consider the points of error presented in their answering brief.
[3] Lighter fails to properly cite where in the record this alleged error occurred. Moreover, neither CBIT Defendants nor Lighter explain or argue this point of error. Thus, we deem this point of error waived. HRAP Rules 28(b)(4) and (7).
[4] Because of our holding in this case, discussed infra, we do not address this point of error since it is moot.
[5] The April 11, 2003 findings of fact mistakenly state that Ober purchased the SSP in 1998. Ober testified that he purchased the SSP in 1989.
[6] Lot 5, Block E, Reg. Map No. 2411, First Land District of the "Olaa Summer Lots."
[7] The circuit court based this finding on the outcome of prior litigation involving that property. In 1988, the Honorable Phillip T. Chun of the Circuit Court of the First Circuit, State of Hawaii, issued an order foreclosing upon the air right easement in Hawaii Thrift & Loan, Inc. v. Erdesca, Ltd., Civil No. 84-1902.
[8] The Complaint to Avoid Transfers of Real Property for Fraud, Breach of Contract and for Specific Performance alleged: Fraud in the Inducement (Count I), Fraud in the Inducement (Count II), Fraud (Count III), Breach of Contract (Count IV), Specific Performance (Count V), Fraudulent Conveyance of OVHP (Count VI), and Fraudulent Conveyance of SSP (Count VII).
[9] Lighter's counterclaim alleged: Hawaii RICO, Racketeering (Count I), Federal Racketeering Influenced and Corrupt Organization Act (Count II), Defamation and Slander of Title (Count III), Injunctive Relief (Count IV), and Abuse of Process (Count V). Lighter also listed a sixth count; however, it is unclear what he was alleging. The third-party complaint was dismissed.
[10] CBIT Defendants' counterclaim alleged: (Count I) that CBIT should be permitted to retain its interest in the OVHP, and (Count II) that CBIT is entitled to an equitable lien or constructive trust on the OVHP, and IFT is entitled to an equitable lien or constructive trust on the SSP.
[11] The trust that Frost transferred her properties into was called the "Tex One Trust" and the trustee of that trust was Bruce Lighter (Eric Lighter's father).
[12] Frost testified about the terms of the settlement agreement as follows:

[FROST:] The Aries Trust received the Alencastre property, the McAllister property back in the trust, and the assignments of all the papers that were in the Aries Trust were put back in Tex One Trust.
Q. And this would be assignments that the Tex One Trust gave these promissory notes air rights on the other matters?
[FROST:] Correct.
The Alencastre property is Frost's family home located on St. Louis Heights in Honolulu, Hawaii. It is unclear from the record and the exhibits which property is referred to as the McAllister property.
[13] Kobayashi's home was valued at approximately $750,000 at the time, and had a $300,000 mortgage.
[14] Kobayashi testified that at some time during the four years that he was in litigation with Lighter, Lighter had tried to sell his property, advertised the property in the newspaper, and had the Board of Water Supply turn off the water at Kobayashi's home.
[15] Hawaii Rules of Civil Procedure (HRCP) Rule 15(b) provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
[16] HRCP Rule 54(c) states, in relevant part, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."
[17] In the transcript of this proceeding, Ober's counsel refers to HRCP Rule 13(b); however, it was later clarified that Ober's counsel meant to refer to HRCP Rule 15(b).
[18] During a subsequent hearing on one of several post-trial motions, the circuit court explained that the $298,167.80 lien was the sum of $150,000 in construction materials, $15,000 down payment for the property, $22,752 for mortgage payments prior to the conveyance of the property to Lighter, $19,715.80 for mortgage payments after the conveyance made to Lighter, $1,800 for a building permit, $1,000 to Brown (licensed contractor), $1,000 for a plumber, $500 for electrical work, and $86,400 for labor performed on the property.
[19] Rules of the Circuit Court of the State of Hawai`i. (RCCH) Rule 7(a) states, in relevant part, that motions "shall be filed and served on all parties not less than 18 days before the date set for the hearing."
[20] The Honorable Terrence T. Yoshioka presided over the hearing on the Motions.
[21] The judgment was amended to include the dismissal of the third-party complaint by Lighter, to dismiss Counts VI and VII of the complaint, and to reflect the dismissal of the actions against Wallis.
[22] The dismissal of counts VI and VII resolved all claims made by Plaintiff William S. Gardner.
[23] The Third-Party Complaint filed by Lighter was dismissed without objection, resolving all claims made against Brown, Reitveld, and James.
[24] Wallis was dismissed by the court based on the CBIT Defendants' failure to serve him.
[25] Because we hold that Ober was fraudulently induced to convey the OVHP, CBIT Defendants argument that there was proper consideration for the transfer of the OVHP, and therefore the circuit court erred in placing an equitable lien on the OVHP in favor of Ober, is moot.
[26] Because we hold that Ober was fraudulently induced to assign the SSP's Lease and Option to Purchase to Lighter, CBIT Defendants challenges to CsOL 16, 17, and 18 are moot.
[27] In their attempt to join in Lighter's amended motion for a new trial, the CBIT Defendants argued that the provisions of Hawaii Revised Statutes Chapter 444 (Supp. 2004) preclude Ober from recovering for work done on the OVHP; this argument was also raised by Lighter in a "Supplement" to his Reply to Ober's memorandum in opposition. However, under RCCH Rule 7(b), the Supplement and the arguments contained therein should not have been filed. RCCH Rule 7(b) provides for the filing of a memorandum in opposition to a motion and a reply to the memorandum in opposition. Under RCCH Rule 7(b), "[a] reply must respond only to arguments raised in the opposition. Unless permitted by another rule or statute, no party may file or serve any papers other than those provided for in this rule." The Supplement introduced a new argument that wasn't raised in the opposition filed by Ober. The circuit court should not have considered the argument filed in Lighter's Supplement, and we will not consider that argument on appeal.
[28] The circuit court partially denied Ober's MIL, allowing Lighter to introduce evidence of Ober's financial status.
[29] The circuit court partially granted the CBIT Defendant's MIL for an order to exclude the introduction of evidence of Lighter's prior bad acts, specifically barring any testimony by Flora Soloman.